SPEAR, Respondent, vs. HILES, Appellant.

*November 9 — November 23, 1886.*

MALICIOUS PROSECUTION. *(1, 2) Probable cause: Belief of guilt: Evidence: Court and jury. (3) Malice: Improper motive. (4) Punitory damages: Wealth of defendant. (5) General belief or report of guilt: Pleading. (6) Evidence: Good faith of district attorney. (7) Damages: Separate confinement of plaintiff and wife. (8) Res gestæ of arrest: Transfer of custody. (9) Excessive damages.*

1. In an action for malicious prosecution it is an essential element of the defense of good faith and probable cause that the defendant should have honestly believed that the plaintiff was guilty of the offense charged.
2. Upon the evidence in this case (stated in the opinion) it is *held* that the question of good faith was properly submitted to the jury.
3 A prosecution is malicious, even in the absence of actual hatred or ill-will, if it is without probable cause and is prompted by any improper motive.
4. Punitory damages will be allowed where the defendant wantonly and maliciously caused the arrest of the plaintiff with intent to injure his feelings and disgrace him in the estimation of the public; and such damages should have some relation to the defendant's financial ability.
5. Evidence to show that when the prosecution was commenced there was a general suspicion or rumor in the place where the offense was committed that the plaintiff was guilty thereof, is inadmissible unless that fact was pleaded.

6. Where the plaintiff did not claim that there was any bad faith on the part of the district attorney who prosecuted him on the complaint of the defendant, it was not error to reject evidence offered to show the good faith of such attorney.

7. Where both the plaintiff and his wife were arrested, the fact that while in jail the plaintiff was kept separate from his wife (it being lawful for the jailer so to keep him), may be considered by the jury in assessing compensatory damages.

8. Where the plaintiff was arrested by a constable and on the same day transferred to the custody of the sheriff, evidence of such transfer is admissible as being part of the *res gestæ* of the arrest.

9. In this case, where the evidence tended to show a malicious and wanton prosecution for incendiarism and that the defendant had large wealth, a verdict for $5,000 damages is *held* not excessive.

APPEAL from the Circuit Court for *Monroe* County.

The action is to recover damages for an alleged malicious prosecution. The defendant and his son were the owners of two warehouses in the village of Dexterville, Wood county, in which was stored a quantity of wooden ware. On the night of Saturday, July 7, 1883, these warehouses were set on fire, and, with their contents, were destroyed. On the 13th of the same month the defendant made a complaint to a justice of the peace, charging that the plaintiff, his wife, and one George L. Haney set the fire which burned the buildings and contents. A warrant was issued by the justice for the arrest of the accused parties, and they were arrested by a constable, and brought before the justice.

In the mean time the defendant sent to Grand Rapids for the district attorney of the county, who, accompanied by the sheriff, reached Dexterville on the evening of the 13th. The district attorney found the complaint defective, and thereupon dismissed the prosecution then pending, drew another complaint, and instituted another prosecution, against the same parties, for the alleged burning. The constable transferred the custody of the plaintiff to the sheriff, who held him under the warrant issued on the second complaint.

The accused parties waived an examination before the justice, and were committed to the jail of Wood county for want of bail. They were detained there for several weeks. They finally procured bail, and were released. An information charging them with the burning was filed against the accused parties by the district attorney, and they were subsequently tried in the circuit court for the crime charged, and were duly acquitted thereof.

This action is to recover damages for such prosecution of the plaintiff and his consequent imprisonment. It is alleged in the complaint that the prosecution was instituted by the defendant maliciously, and that he had no probable cause to believe the plaintiff guilty of the crime charged.

Sufficient mention of the testimony and the rulings of the court on the trial will be found in the opinion. The jury found for the plaintiff and assessed his damages at $5,000. A motion for a new trial was denied, and judgment entered pursuant to the verdict. The defendant appealed from the judgment.

For the appellant there was a brief signed by *E. Q. Nye* and *Morrow & Masters*, attorneys, and *H. W. Chynoweth*, of counsel, and the cause was argued orally by *Mr. Morrow* and *Mr. Chynoweth*.

For the respondent there was a brief signed by *Quarles & Spence*, and oral argument by *Mr. Quarles* and *Mr. J. T. Fish*.

Lyon, J. The case was sharply litigated in the trial court. A large amount of testimony was introduced, and numerous exceptions were taken to the rulings of the court on the trial. Many of the rulings so excepted to are relied upon here as sufficient grounds for reversing the judgment. In this case (as in many other cases in which the exceptions are numerous) the errors assigned may be classified under a few general heads, and be disposed of without the necessity of making a detailed statement of the challenged rulings.

I. We will first consider the instructions relating to probable cause, malice, and damages, and the refusal of the court to give a single instruction asked by the defendant.

1. Assuming that the alleged malicious prosecution was commenced by the making of the second complaint (as the court instructed the jury in a variety of forms), and that the first complaint and the proceedings thereon are of no importance in the action, we think the evidence still leaves the question as to whether the defendant has or has not made good his defense that he acted honestly under the advice of the district attorney, a proper one for the jury.

The jury were instructed as follows: " If the jury believe from all the testimony in the case that the defendant, *Mr. Hiles*, before the institution of the criminal proceedings in which and by virtue of which this plaintiff, *Mr. Spear*, was arrested, taken before the justice of the peace, and was committed to jail in default of bail, in good faith made a statement to the district attorney of the facts of which he had knowledge or information, relating to the connection of the plaintiff with the burning of the buildings, fully and fairly; and that *Mr. Hiles* believed such facts so stated to the district attorney to be true; and thereafter the district attorney, acting in his official capacity, caused the warrant to be issued and the plaintiff arrested and the subsequent proceedings to be had that were had in that action,— then in such case the defendant is not liable in this action." The same instruction was substantially given in other forms, but with the additional condition that the defendant believed the plaintiff to have been guilty of the crime with which he was charged. We think these instructions state the law correctly. That a belief by defendant in the truth of the statements made to him by other persons as to the origin of the fire, and a belief that the plaintiff was guilty of setting the fire, are essential elements of good faith and integrity of purpose on the part of the defendant, cannot be doubted.

Considered most favorably for the defendant, there is much evidence and many facts in the case bearing upon the question of the good faith of the defendant, and that question is to be determined mainly by the inferences to be drawn therefrom. It is for the jury to do this. But if we look into the testimony more closely and minutely, the necessity of submitting the question of good faith to the jury becomes more apparent. The facts which the defendant testified had been furnished to him by others, and which he in turn stated to the district attorney, were—

*First.* In conversations with people at Dexterville he had heard the plaintiff's name mentioned in connection with the burning. *Second.* One Hammond and his wife had stated to him conversations with the plaintiff's wife, before and after the fire, in which the latter indicated that she knew that the buildings were to be burned and that Haney burned them. *Third.* One Ellison had told the defendant that plaintiff predicted the fire a few days before it occurred.

The alleged statements of the plaintiff's wife to the Hammonds, and similar alleged statements by her to others, furnish little or no basis of probable cause to believe the plaintiff guilty of the burning. The jury were substantially so instructed. The statement of Ellison, and certain conversations with others tending to cast suspicion upon the plaintiff, are the only statements made to the defendant upon which the existence of such probable cause can be predicated. There is much evidence tending to show that this statement of Ellison was not repeated by the defendant to the district attorney. Ellison first testified on the subject of the alleged conversation on the trial of the plaintiff in the circuit court, and the defendant first mentioned the matter in court in his testimony on the trial of this action. Moreover, the proof is that fires had recently been set by a locomotive passing near the buildings which were after-

wards burned, and the plaintiff, who had been appointed to watch those buildings, only predicted that they would be burned unless the shavings around them should be removed. It is a significant fact that neither Ellison nor either of the Hammonds was called as a witness on the trial, and the failure to call them was not explained. Indeed, it appeared that the male Hammond was in Sparta, where the cause was tried, while the trial was in progress. The other statements so made to the defendant are of a character which rendered it proper for the jury to determine the weight to which they were entitled.

Whether the defendant knew of the alleged statement or prediction to Ellison when he instituted the prosecution, and, if he did and advised the district attorney thereof, what inferences, under the circumstances, should be deduced therefrom, and also from such other statements, affecting the question of probable cause, were peculiarly for the determination of the jury.

2. It cannot be successfully questioned, we think, that the testimony was sufficient to send the question of the defendant's malice to the jury. It tends to show angry interviews between the parties, immediately before the criminal prosecution was commenced, with reference to the cause of the fire and the value of the property destroyed, and a peremptory refusal by the plaintiff to make a certain statement concerning such value which the defendant several times urged him to make. It is immaterial that the truth of such testimony is denied by other testimony in the case. It was competent for the jury to believe the testimony of the plaintiff in that behalf, and to find therefrom the existence of malice on the part of the defendant.

Such malice may also have existed in the absence of actual hatred or ill-will towards the plaintiff. If the criminal prosecution of the plaintiff was without probable cause, and was prompted by any improper motive on the part of the defendant, it was a malicious prosecution.

The testimony (although controverted) tends to show that the property burned was insured to an amount greatly in excess of its value; that the insurance companies were investigating the loss immediately before the plaintiff was arrested; that the agents of the companies thought it a singular fire, and that, at about the same time, the plaintiff had expressed to the defendant the opinion or suspicion that the property had been destroyed for the purpose of getting the insurance thereon. If the jury believed this testimony, it was reasonable and proper to infer therefrom that the plaintiff, his wife, and Harley were charged with the burning for the purpose of allaying any suspicion those companies might entertain that the property was destroyed for the purpose above suggested. For these reasons, we think the instructions on the subject of malice are unexceptionable. They are as follows: "The term 'malice,' in this form of action, does not mean hatred or ill-will towards the plaintiff, but it includes any ulterior or improper motive. Therefore, if you should find that the defendant's property, which had been destroyed by fire, was, at the time of the fire, insured for a large sum, and that the insurance companies had not adjusted the loss but were talking of refusing to pay the insurance on the ground that the fire had been set to obtain the insurance; and the defendant prosecuted the plaintiff with the motive and intent to allay suspicion on the part of the insurance companies, and thereby obtain the insurance money,— then the motive of the defendant was malicious, within the meaning of the law. If you find from the evidence that the defendant prosecuted the plaintiff from any motive other than honest belief in his guilt and desire that public justice might be vindicated, then the prosecution was malicious, within the meaning of the law, for the law does not permit an individual to use its criminal process for any ulterior or improper motive."

3. The court gave the jury the law of punitory damages with substantial accuracy. The instructions in that behalf

are as follows: "If the jury find that the defendant wantonly and maliciously caused the arrest of the plaintiff, with intent to injure his feelings and disgrace him in the estimation of the public, the jury not only may, but they ought to, go further, and give punitory damages in such a sum as will be a warning to the defendant and all other persons not to commit such wrongs and injuries. Punitory damages are given in law as an admonition to the defendant and all other persons not to perpetrate similar wrongs; and consequently such damages, to be effectual, must have some relation to the financial ability of the defendant. A sum in damages which would be a salutary warning to a man of limited means would hardly arrest the attention of a millionaire; and it is on that theory alone that the testimony of the financial ability of the defendant was admitted."

4. The charge consisted entirely of instructions proposed by the respective parties. All those proposed on behalf of the defendant, save one, were given either as proposed or in a modified form. The most material modification was to the effect that the belief of the defendant that the plaintiff was guilty of the burning is an essential element of probable cause. No man has the right to institute a criminal prosecution unless he honestly believes the accused guilty of the crime charged against him. It would be absurd to say that a person has probable cause to believe another guilty of a crime when he does not believe that such other is guilty thereof. We think all such modifications were advisedly and correctly made.

The instruction refused was to the effect that the prosecution first commenced was terminated by its dismissal at the instance of the district attorney. The instruction was unnecessary. The whole charge went upon the theory that such prosecution was terminated by the act of the district attorney and was no basis for damages in this action.

Further discussion of the instructions is unnecessary.

Those chiefly relied upon by counsel for the defendant for a reversal of the judgment are fully sustained by the views above expressed. Indeed, the rules of law governing actions for malicious prosecutions are so elementary that it would be cause for surprise had the learned and able judge who presided at the trial gone far astray in his instructions to the jury.

II. It remains to consider the rulings of the court on objections to the admission of testimony.

1. The court rejected testimony tending, or which may have tended, to show that there was a general suspicion or rumor at Dexterville, after the fire and before the plaintiff was arrested, that he, together with his wife and Haney, set the fire.

In *Scheer v. Keown*, 34 Wis. 349, which was an action for the alleged malicious prosecution of the plaintiff for larceny, it was held that testimony of the bad reputation of the plaintiff in her neighborhood in respect to theft, was admissible if pleaded, otherwise not. Such testimony bears directly upon the question of probable cause. The reasons why such bad reputation should be pleaded are quite fully stated in the opinion by DIXON, C. J., and need not be repeated here. Testimony of the existence of a general belief or report of the guilt of one accused of crime, bears just as directly upon the question of probable cause, and is therefore admissible. *Pullen v. Glidden*, 68 Me. 559. But the same reasons exist for requiring the fact of such report to be pleaded before proof of it is admissible as controlled the judgment in *Scheer v. Keown*.

The defendant alleged in his answer that the unanimous public expression of the community at Dexterville was that the fire was an incendiary one, and that, in his investigation of the cause thereof, "defendant conversed with many different persons in Dexterville, and who were present at the burning of said buildings, and that most of the persons

with whom the defendant talked upon said subject expressed the opinion that said fire had been set by the plaintiff and his wife, Sylvia Spear, and one George L. Haney." But the answer contains no averment of the existence of any general suspicion or rumor that the plaintiff was one of the guilty parties. Because of this omission, it must be held that the offered testimony under consideration was properly rejected.

It should be observed that all testimony offered on behalf of the defendant of what others had said to him tending to implicate the plaintiff as one of the guilty parties, was admitted.

2. The district attorney was examined as a witness. The court sustained objections by plaintiff to certain questions put to him on his cross-examination by defendant's counsel, as to whether he acted in good faith in prosecuting the plaintiff for burning defendant's buildings. There was nothing in the evidence tending to impeach the good faith of the district attorney, if his good or bad faith is of any importance in the case. That could only be important where it is claimed that he acted in bad faith to the knowledge of the prosecutor. No such claim is made in this case. The claim of the defendant is that the district attorney acted in good faith, and it is a verity in the case that he did so. The rejected testimony, had it been received, could not have been of any value to the defendant.

3. The plaintiff was allowed to testify that while in jail he was kept separate from his wife. It was lawful for the keeper of the jail to confine them separately. The plaintiff cannot have damages in this action for any unlawful restraint or acts of oppression to which he was subjected by such keeper; but the lawful treatment he received while in jail may be proved, and is a proper subject to be considered by the jury in assessing compensatory damages.

4. The sheriff was permitted to testify that he received

the custody of the plaintiff from the constable who had him in arrest. The fact pertains to the *res gestæ* of the arrest, and proof of it was admissible. It is, however, of little or no importance in the case.

The foregoing are the only rulings on the objections to testimony which are deemed of sufficient importance to require special notice.

III. It is said that the damages are excessive. The testimony tends to show that the plaintiff was greatly wronged by the defendant in the matter of the criminal prosecution, in that his reputation was wantonly assailed and his rights entirely disregarded. We do not say these things were proved, but the testimony is sufficient to uphold a special verdict to that effect. Besides, it is now a verity in the the case that the prosecution of the plaintiff by the defendant for a very serious crime was malicious and without probable cause. Considering these circumstances, which make the case a proper one for the infliction of punitory damages, and considering also that the defendant has large wealth (as appears by the testimony), we are unable to say that the damages awarded by the jury are so large as to justify the interposition of this court.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 30 N. W. Rep. 511.— REP.