FLETCHER *v.* CHICAGO & NORTHWESTERN RAILWAY CO.

1. MALICIOUS PROSECUTION—ADVICE OF COUNSEL.

It is a complete defense to an action for malicious prosecution that, before preferring the charge on which the plaintiff was arrested, the defendant fairly laid all of the material facts connected with the affair before the acting prosecuting attorney, a lawyer of 18 years' experience, and acted entirely upon his advice; and this, although such attorney was at the time the local attorney for the defendant, a railroad company.

2. SAME—DAMAGES.

The plaintiff in an action for malicious prosecution, prior to his arrest, had undergone a surgical operation. On the trial he claimed that, in going from the train to the justice's office, a distance of about 100 feet, he got his feet wet, and caught cold, that his injured parts became affected, and that he suffered therefrom. It appeared that he was addicted to the use of intoxicating liquors; that he was not at any time placed under actual restraint; that, on the same day, he went to saloons at least twice, and, in doing so, walked in the snow; and that he otherwise voluntarily exposed himself. His own physician testified that his condition, when examined by the witness after the arrest, might have been the result of the use of intoxicating liquors alone. *Held,* that the element of damage claimed to result from physical suffering should have been eliminated from the consideration of the jury.

3. SAME—EVIDENCE—NEWSPAPER ARTICLES.

In an action for malicious prosecution, a newspaper article which merely states the fact of plaintiff's arrest is admissible; but a further statement therein that the defendant proposed to "push the matter to the limit" is inadmissible, unless shown to have been prompted by him, especially where his responsibility for the prosecution is disputed. In such case, if the article is so framed that the admissible part cannot be read without introducing the objectionable matter, the whole should be excluded; but it would be competent to have it appear before the jury that the fact of the arrest was published in the paper.

4. Same—Docket Entries.

In such an action, the c..tries in the docket of the justice before whom the plaintiff was examined after his arrest are admissible, in so far as they state those things which the law requires to be there entered; but a statement therein that the case was discontinued by the complainant, "representing" the defendant in the civil suit, a corporation, is inadmissible.

5. Same—Admissions—Authority of Agent.

In an action against a railroad company for malicious prosecution in causing the arrest of the plaintiff for knowingly receiving stolen property, statements made by the local attorney for the road, that there had been considerable feeling over the stealing from the company, that they thought plaintiff had been at the head of it, and that they wanted to put a stop to it, are inadmissible, where the attorney had no general authority, and had not been employed in the matter in question.

6. Same—Probable Cause.

In an action against such company, evidence that plaintiff was seen with one who stole goods from the company, that such goods were afterwards found upon the train with parcels belonging to the plaintiff, and that they were taken to his house by one who accompanied him, sufficiently shows probable cause for instituting the prosecution.

Error to Gogebic; Haire, J. Submitted January 15, 1896. Decided May 19, 1896.

Case by Lennell C. Fletcher against the Chicago & Northwestern Railway Company for malicious prosecution. From a judgment for plaintiff, defendant brings error. Reversed.

*R. C. Flannigan*, for appellant.

*Button & Norris*, for appellee.

Grant, J. A Mr. Houle made complaint before a justice of the peace of Interior township, county of Ontonagon, charging that a jar of butter had been stolen from the defendant company, and that he had good reason

to suspect that plaintiff received said jar of butter, knowing it to be stolen.   Plaintiff appeared before the justice on the following day, and his examination was postponed.   This suit was discontinued, and a similar complaint made by Mr. Houle before a justice of the peace in Bessemer, Gogebic county, on January 22, 1894.   An examination was held, the justice found probable cause to believe the plaintiff guilty, and held him to the circuit court for trial.   In the circuit court a *nol. pros.* was entered by the prosecuting attorney.   Plaintiff then instituted this suit for malicious prosecution, and had verdict and judgment.

The larceny of the jar is conclusively established, and that it was stolen by one Ole, who, with the plaintiff and two men by the name of Hier, passed together over the platform to the caboose of the train, which plaintiff and the Hiers took for conveyance to Paulding, where plaintiff lived.   Ole carried the jar into the caboose, which he entered at the same time with the plaintiff.  The jar was placed, with some packages which plaintiff had purchased at Watersmeet, upon the floor of the cupola of the caboose. Ole did not accompany the train.   Within a few minutes after the jar was taken, the trainmen discovered its loss. One Johnson had seen Ole carrying the jar, from which the tag had been torn, into the caboose.   Upon investigation it was discovered with the plaintiff's packages.   Upon arriving at Paulding, plaintiff requested Mr. Hier to assist him in carrying them out.   They stood together when Hier took some of them, including the jar.   Plaintiff took the rest of his things, and the two left the car, and went to plaintiff's saloon.   The jar, with other things, was there placed upon the bar.   Plaintiff went behind the bar, dealt out some liquor to those present, and then requested Hier to take the things to his house, about 300 feet distant.   The conductor saw Hier take the jar from the car, and carry it away.   Not knowing him, he inquired his name of some one.   This person went immediately and informed Mr. Hier of the inquiry made by

the conductor.   Thereupon Mr. Hier went immediately to the conductor before the train went out, and asked if anything was wrong with the jar of butter, to which the conductor replied, "You will find out in a day or two." On the next day Hier returned the jar to defendant. Soon after this Houle appeared at Watersmeet and Paulding, investigating into the alleged theft.   He and the conductor appeared before Justice Shields, and stated the case to the justice, before whom the first complaint was then made.   The justice testified that he issued a warrant, which, however, was not produced upon the trial.   The further facts, so far as material, will be stated in connection with the points discussed and determined.

1. I think that the court should have instructed the jury that there could be no recovery for the second arrest, because Mr. Houle fairly laid all material facts before Mr. Riley, an attorney of 18 years' experience, and acting prosecuting attorney of the county, upon whose advice the complaint was made and the warrant issued. Mr. Riley was a witness for the plaintiff, and testified to the facts communicated to him by Houle, and it conclusively appears from his testimony that all the material facts were placed before him by Mr. Houle.   This defense was not weakened because Mr. Riley was the local attorney for the company.   Even if Mr. Riley had not been the prosecuting attorney, but the private attorney of the company, and all the material facts had been placed before him, such advice, acted upon, would constitute a complete defense.   *Perry* v. *Sulier*, 92 Mich. 72; *Le Clear* v. *Perkins*, 103 Mich. 131.

2. I think one element of damage was improperly submitted to the jury.   In December, before the first alleged arrest, plaintiff had had an operation performed in a hospital in Ashland, Wis.   After it was performed, and before leaving for home, his physician cautioned him to be careful about any extraordinary exertion, and about taking cold.   At neither arrest was the plaintiff actually imprisoned, or even put under restraint.   He was allowed

to go and come as he chose, upon his promise to appear before the justice for examination. He claims that in going from the train to the justice's office January 16th, a distance of about 100 feet, he got his feet wet, caught cold, and that about five days thereafter his injured parts were affected, and that he suffered therefrom. He wore cloth shoes, as he said, to prevent his slipping. He admitted that he was addicted to the use of intoxicating liquors; that he was frequently under the influence of liquor; that he had had two fights, not far from the time of his arrest, in one of which he knocked a man down, and in the other he threw a man out of his saloon, among some beer kegs; that on the 16th of January he went to saloons in Interior at least twice, and in doing so he walked in the snow; that the weather on the 14th and the 15th was the same as on the 16th, the condition of the snow the same at Paulding as at Interior; that he walked many hundred feet in the snow on these two days, wearing the same cloth shoes. He had no appearance of sickness, and made no complaint to the officer. His own physician testified that his condition, when he examined him after the arrest, might have been the result of the use of intoxicating liquors alone. There was no necessity of his wearing cloth shoes which would wet through in walking upon the snow. He exposed himself while at Interior, awaiting examination before the justice, unnecessarily, in walking through the snow on his way to saloons, and in remaining outdoors when there was ample opportunity for him to be indoors. The injury from which he claimed to be suffering was a peculiar one, which might naturally excite the sympathy of a jury. Upon no other basis can the large verdict of $2,500 be accounted for. A person cannot recover for the alleged wrong of another, when it clearly appears, from his own admissions, that his own indiscreet and negligent conduct has contributed to the injury, or when such injury can, with more reason, be attributed to the latter than to the former. The court should have eliminated these ele-

ments of damage, claimed to result from physical suffering, entirely from the consideration of the jury; and, in view of a new trial, it is proper also to remark that all evidence of this operation and his physical suffering should be excluded from the consideration of the jury.

3. Objection was made to the admission of a certain newspaper article upon the arrest of plaintiff and Hier. It reads as follows:

"The Northwestern Tracing Department is going to make it decidedly hot for certain light-fingered people who live on the Interior branch. For some months past a series of petty robberies have been committed against the company, the climax being reached when two men, named Fletcher and Hier, were placed under arrest, at the instance of the company's detective, charged with stealing merchandise from the platform of the Watersmeet depot. Conductor Lyon, Messenger Reid, and Brakemen Lavigne and Durke went to Watersmeet Wednesday to appear as witnesses against the alleged robbers, but the hearing was postponed until next Tuesday, January 30th. The company propose to push the matter to the limit."

So far as this article stated the fact of the arrest, it was admissible, under the authorities; but, in so far as it stated what the company proposed to do, it was clearly incompetent. There was nothing to show that the article was prompted by the company, or by an agent thereof. It may have furnished the entire reason for the jury to find that Mr. Houle was authorized by the company to make the complaint. If such an article be so framed that it cannot be read without introducing the objectionable matter, it must be excluded; but it would be competent to have it appear before the jury that the fact of his arrest was published in the paper. *Anderson* v. *Keller*, 67 Ga. 58.

4. The docket entry of Justice Shields, in the case of *People* v. *Fletcher*, was introduced in evidence, and read to the jury. In so far as it stated those things which the law requires to be there entered, it was admissible, but

the statement that the case was "discontinued by S. S. Houle, representing the Chicago & Northwestern Railway Company," was inadmissible.

5. Mr. George, the justice, was permitted, under objection, to testify that Mr. Riley, the acting prosecuting attorney and local attorney for the company, said to him, the morning after the issuing of the warrant:

"To the best of my recollection, Mr. Riley said there had been considerable feeling over the stealing from the railroad company between Watersmeet and Paulding, and they thought Fletcher had been at the head of it, and that they wanted to put a stop to it."

As local attorney Mr. Riley had not been authorized to act or speak for the company, except as to those matters which were specially intrusted to him. He had no general authority. He had not been employed by the company in this matter, and therefore this testimony should have been excluded.

6. I also think that the court, as the record now stands, should have directed a verdict for the defendant, for the reason that there was probable cause to believe that plaintiff was guilty of the crime with which he was charged, and there is no scintilla of evidence upon this record to show any malice, either on the part of Mr. Houle or any officer of the defendant company. The people at large are interested in the suppression of crime. While the advice of the justice of the peace is no defense to an action for malicious prosecution, yet in this case it is of importance in determining the question of malice, without which plaintiff is not entitled to recover. Mr. Shields, the justice of the peace before whom the first complaint was made, a witness for the plaintiff, testified that Mr. Houle and the conductor placed all the facts and circumstances in regard to the larceny, and plaintiff's connection therewith, before him, and that he acted thereon. There was no haste in making the complaint against the plaintiff. No desire is shown on the

part of any one to do otherwise than to accomplish the arrest of the guilty parties. There is no evidence of bad faith. Stealing from the railroad company had been going on for some time. Mr. Ole had left the country, and could not be found. Immediately after the larceny, the property was found in plaintiff's possession. It was taken to his saloon, and from thence to his house. Mr. Hier, who evidently was with Ole and the plaintiff when the jar was stolen, upon being told that the conductor was inquiring his name, immediately sought him, and asked if anything was wrong about the jar of butter. This clearly showed his knowledge of how it was obtained. No reasonable person can reach any other conclusion than that the plaintiff saw it among his things in the caboose; that he saw Hier take it from the caboose; that he saw it upon his bar; that he knew Hier took it to his house; that he knew that Ole stole it; and that he knew that it was not his. The only defense he sets up is that he had drunk a good deal that day, and was in a state of partial intoxication. If parties, under these circumstances, cannot make a criminal complaint without being subjected to an action for malicious prosecution, then it is hardly safe for any man whose property has been stolen to make such complaint.

It is unimportant to consider the several other allegations of error.

Judgment reversed, and a new trial ordered.

The other Justices concurred.