Dewey Kness, Appellee, v. William Kommes, Appellant.

DECEMBER 14, 1928.

*T. M. Rasmussen* and *J. A. Graham*, for appellant.

*Charles S. White*, for appellee.

DE GRAFF, J.—Damages in this case are predicated on malicious prosecution. With the essential elements of the tort this appeal is not vitally concerned. Two propositions are relied upon by appellant for a reversal: (1) That the court erred in the admission of evidence showing that costs were taxed to the prosecuting witness (appellant) in the criminal proceeding entitled State v. Dewey Kness; (2) that the verdict is excessive. Of these in their order:

I. It appears that, during the examination of the justice of the peace as a witness on the instant trial, that magistrate was permitted to testify, over apt objections, that the costs of the criminal prosecution were taxed to and paid by the prosecuting witness Kommes. It further appears that the trial court, subsequent to the admission of this evidence, recognized that it was probably error to admit this line of testimony as bearing on the question of probable cause or malice, and, in an instruction given to the

jury, specifically stated that "neither want of probable cause nor malice may be inferred from the fact that the justice of the peace, when dismissing said criminal action, taxed the costs of said criminal proceedings to the defendant herein." The jury was also given the usual instruction that the verdict must be based "solely upon the evidence and the law as here given."

The question then is: Was the inadvertent admission of the challenged testimony, in the light of the instructions, without prejudice? We answer in the affirmative. As bearing upon the competency of the evidence in question, see *Martin v. Corscadden*, 34 Mont. 308 (86 Pac. 33) ; *Casey v. Sevatson*, 30 Minn. 516 (16 N. W. 407) ; *Farwell v. Laird*, 58 Kan. 402 (49 Pac. 518) ; *Fletcher v. Chicago & N. W. R. Co.*, 109 Mich. 363 (67 N. W. 330) ; *Bays v. Herring*, 51 Iowa 286; *Davis v. Seeley*, 91 Iowa 583.

II. Shall this court say, under the facts and the findings of the trial court thereon, that the verdict upon which the judgment was entered is excessive? The answer of the defendant in the instant case admits that an information was filed by the defendant against Kness at the time and place alleged, and admits that, after a hearing before a justice of the peace in a certain township in Audubon County to whom the case had been transferred, Kness was released and discharged of the crime charged.

The facts disclose that Dewey Kness (appellee) was employed by the defendant on the latter's farm at $50 per month, with the right to keep chickens and one cow, and was to receive his meat. It is further shown that an arrangement was made whereby Kness, who owned a sow, would raise his own meat, and the defendant would furnish feed for same. This sow lost her pigs, and Kness bought another sow with eight pigs. The information filed against Kness charged him with the crime of grand larceny of hogs. He was arrested, compelled to furnish bail, and had a preliminary hearing on the crime charged. It is obvious that the instant record justified the trial jury in finding that the hogs in question belonged to Kness, and were his property. The most that could be claimed by the defendant Kommes was that Kness owed something by way of a feed bill for the hogs in controversy.

It is further shown that, prior to the filing of the infor-

mation, Kommes consulted no attorney. Upon the preliminary hearing, it was shown that Kommes did not claim ownership of the hogs. This is established by the testimony of the justice of the peace upon the trial of this cause. There was other testimony to prove this fact as to claim of ownership. The evidence warrants a finding that Kommes knew, when he filed information against Kness charging him with larceny, that he could not prove or in good faith claim that he (Kommes) owned the hogs which were the subject of the alleged larceny. It goes without saying that Kness, by reason of the commencement of said criminal proceedings, suffered great humiliation. The record not only proves this, but also that it made Kness uncertain as to occupation, lost him at least one job, hurt his feelings, and not only reflected upon his own reputation, which stood unimpeached in that community, but reflected upon the good name of his family. Under all the circumstances of this case, we are constrained to hold that the reduced verdict is not excessive. Before a verdict is subject to the challenge of being excessive, this court must find some gross or palpable error on the part of the jury, or that the jury acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which the damages are measured and regulated. Other cases involving the instant proposition do not constitute well defined precedent, by reason of the variance of facts presented by the records in such cases.

There is no legal yardstick to measure damages in malicious prosecution. In no two cases of this character are the facts the same, and it necessarily follows that the award in different cases must be and will be different. In one case there may be grounds for an honest mistake, and usually we find that the prosecuting witness acted upon the advice of counsel, after placing before him all of the facts and circumstances. In the case at bar, the prosecuting witness made no inquiry as to his rights from competent counsel. There is no showing that the criminal prosecution was commenced in good faith. The jury could have found that the criminal action was without legal justification, and that the rights of Dewey Kness were willfully disregarded. The jury could have found that the prosecuting witness was using a criminal court to cause Kness to ''come across'' on a claimed civil liability. The evidence satisfactorily shows that Kness was a

man of good character, and this being true, such a person could be damaged to a greater extent than a person whose moral character or reputation for truth and veracity was shown to be bad. See *Davis v. Seeley*, 91 Iowa 583 (51 Am. St. 356); *Rule v. McGregor*, 115 Iowa 323. As bearing on the quantum of damages, see *Shea v. Cloquet Lbr. Co.*, 97 Minn. 41 (105 N. W. 552); *Billingsley v. Maas*, 93 Wis. 176 (67 N. W. 49); *National Sur. Co. v. Mabry*, 139 Ala. 217 (35 So. 698); *Spencer v. Cramblett*, 56 Kan. 794 (44 Pac. 985); *Cuthbert v. Galloway*, 35 Fed. 466; *Spear v. Hiles*, 67 Wis. 350 (30 N. W. 506); *Vinal v. Core and Compton*, 18 W. Va. 1; *Ross & Co. v. Innis*, 35 Ill. 487.

In the *Ross & Co.* case, supra (malicious prosecution), the court said:

"There is no standard by which damages in such a case shall be measured. Much is committed to the intelligence of the jury; much faith is reposed, and must be, in their sense of right and justice. We cannot say they have gone astray, and cannot, therefore, disturb this verdict."

Apt language was used by Lord Mansfield in *Gilbert v. Burtenshaw*, 1 Cowp. 230:

"I should be sorry to say that in cases of personal torts no new trial should ever be granted for damages which manifestly show the jury to have been actuated by passion, partiality, or prejudice. But it is not to be done without very strong grounds, indeed, and such as carry internal evidence of intemperance in the minds of the jury. It is by no means to be done where the court may feel that, if they had been on the jury, they would have given less damages, or where they might think the jury themselves would have completely discharged their duty in giving a less sum. Of all the cases left to a jury, none is more emphatically left to their sound discretion than such a case as this; and unless it appears that the damages are flagrantly outrageous and extravagant, it is difficult for the court to draw the line."

The same thought is expressed by Justice Story in *Whipple v. Cumberland Mfg. Co.*, 2 Story (U. S. C. C.) 661 (29 Fed. Cas. 934 [No. 17,516]).

For the reasons indicated herein, the judgment entered is —*Affirmed.*

EVANS, ALBERT, MORLING, and WAGNER, JJ., concur.