GLADFELTER, Respondent, vs. DOEMEL, Appellant.

*December 5, 1957—January 7, 1958.*

636

638

For the appellant there was a brief by *Jansen & Wallace* of Oshkosh, and *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner, Sr.*

For the respondent there was a brief by *Henry P. Hughes* of Oshkosh, attorney, and *Herbert S. Humke* of Sheboygan of counsel, and oral argument by *Mr. Humke*.

CURRIE, J.   The defendant advances the following contentions on this appeal:

(1) That he made a full and fair disclosure of all the facts within his knowledge to the district attorney and signed the criminal complaint against the plaintiff in reliance upon the advice of such district attorney, thereby establishing probable cause as a matter of law.

(2) That the defendant had probable cause to believe the plaintiff guilty as a matter of law.

(3) That the trial court committed prejudicial error in admitting evidence relating to Oshkosh Poultry Products, Inc., and the separate legal proceedings instituted by plaintiff against the defendant with respect to such corporation.

(4) That the damages awarded to the plaintiff are excessive.

In the case of *Elmer v. Chicago & N. W. R. Co.* (1950), 257 Wis. 228, 231, 43 N. W. (2d) 244, this court enumer-

ated the six essential elements necessary to establish a cause of action for malicious prosecution. Two of such elements are malice on the part of the defendant in instituting the prior proceedings against the plaintiff, and want of probable cause for instituting the same.

The burden of proof is upon the plaintiff to establish all six elements; and, if he fails with respect to any one of them, the defendant prevails. There is a strong reason of public policy for thus making it rather onerous for a person to successfully maintain an action for malicious prosecution. This is well stated by the Colorado supreme court in *Montgomery Ward & Co. v. Pherson* (1954), 129 Colo. 502, 508, 272 Pac. (2d) 643, 646, as follows:

"It is for the best interests of society that those who offend against the laws of the state shall be promptly punished, and that any citizen who has reasonable grounds to believe that the law has been violated shall have the right to cause the arrest of the person whom he honestly and in good faith believes to be the offender. For the purpose of protecting him in so doing, it is the generally established rule that if he has reasonable grounds for his belief, and acts thereon in good faith in causing the arrest, he shall not be subjected to damages merely because the accused is not convicted. The rule is founded on the grounds of public policy in order to encourage the exposure of crime."

In further keeping with this public policy, if the defendant in a malicious-prosecution action has instituted a criminal proceeding against the plaintiff upon the advice of counsel after making a full and fair statement of the facts within the defendant's knowledge, honestly believing the plaintiff to be guilty, this affords the defendant a complete defense as a matter of law. *Brinsley v. Schulz* (1905), 124 Wis. 426, 102 N. W. 918; *King v. Apple River Power Co.* (1907), 131 Wis. 575, 111 N. W. 668; *Smith v. Federal Rubber Co.* (1920), 170 Wis. 497, 175 N. W. 808; and *Elmer v. Chica-*

*go & N. W. R. Co.* (1952), 260 Wis. 567, 51 N. W. (2d) 707. The advice of prosecuting attorneys affords the same cloak of protection as does advice of private practitioners. Prosser, Law of Torts (2d ed.), p. 655, sec. 98; and annotation in 10 A. L. R. (2d) 1215.

The authorities are in dispute as to whether this defense of fair disclosure and acting upon advice of counsel goes to the issue of probable cause or that of malice, or both. See annotation 10 A. L. R. (2d) 1215, at page 1260 *et seq.,* secs. 16, 17, 18, and 19. Cf., *Smith v. Federal Rubber Co., supra,* in which it was held that such defense related to the issue of probable cause; and *Elmer v. Chicago & N. W. R. Co.* (1952), 260 Wis. 567, 51 N. W. (2d) 707, which declared it went to both the issues of probable cause and malice.

The issue of probable cause is one of law for the court while that of malice is one of fact for the jury. 1 Harper and James, Law of Torts, p. 319, sec. 4.5. However, it is only where the material facts are undisputed that a court can pass upon the issue of probable cause without aid of a jury. Where the facts are in dispute, the issue of probable cause then becomes a "mixed one of law and fact," and is submitted to the jury to decide under proper instructions from the court as to the law. Prosser, Law of Torts (2d ed.), p. 658, sec. 98; and *Elmer v. Chicago & N. W. R. Co.* (1950), 257 Wis. 228, 232, 43 N. W. (2d) 244.

The fact, that the defendant in a malicious-prosecution action did make a fair disclosure to an attorney and institute the prosecution upon his advice, undoubtedly tends to negative malice. However, where a trial court is faced with the problem of whether to direct a verdict for the defendant in such a situation, on the ground that such fair disclosure and reliance upon advice of an attorney establishes probable cause as a matter of law, the court is not concerned with whether the disclosure and reliance upon advice of counsel also tend

to negative malice. In considering such question of whether to direct a verdict, the court must review the evidence to see if there is any which affords a reasonable basis for inferring malice. If there is no evidence upon which a jury might base a finding of malice, and the facts are not in dispute that a full and fair disclosure was made to an attorney and the prosecution instituted upon his advice, then it is the duty of the court to direct a verdict for the defendant. *Smith v. Federal Rubber Co., supra;* and *Elmer v. Chicago & N. W. R. Co.* (1952), 260 Wis. 567, 51 N. W. (2d) 707.

The reason why a verdict cannot be directed in favor of the defendant on the issue of fair disclosure and reliance upon the advice of counsel, where there is evidence present from which a jury might infer malice, is because malice destroys such defense. 1 Harper and James, Law of Torts, p. 322, sec. 4.6, and Restatement, 3 Torts, pp. 426, 427, sec. 668, comment *h.* A person instituting a criminal prosecution is actuated by malice if he is found to have acted chiefly from motives of ill will, or if his primary purpose was something other than the social one of bringing an offender to justice. Prosser, Law of Torts (2d ed.), p. 659, sec. 98. The Restatement avoids the use of the word "malice" entirely in defining the elements of a cause of action for malicious prosecution, and substitutes therefor "if the proceedings were initiated . . . primarily because of a purpose other than that of bringing an offender to justice." Restatement, 3 Torts, p. 382, sec. 653. Statements appearing in court opinions which deal with the defense of fair disclosure and reliance upon advice of an attorney, that the defendant must have sought or relied upon such advice in good faith, or that the defendant must have honestly believed the plaintiff to be guilty, in order to avail of such defense, are the equivalent of stating that there must have been an absence of malice.

A jury cannot base a finding of malice upon speculation or conjecture. In order to sustain such a finding there must be

some positive evidence in the record from which a jury may reasonably infer that the defendant instituted the prosecution for some purpose other than bringing an offender to justice. In the instant case we deem there was ample credible evidence present to sustain the jury's finding that the defendant was actuated by malice.

On the morning of August 17, 1956, Stauffer, the accountant, and defendant's son, who was the bookkeeper of the Oshkosh Storage Company, went to the district attorney and presented to him facts which pointed to the plaintiff as being responsible for the $75 shortage. The district attorney was noncommittal as to what he proposed to do except to state that he wanted to talk the matter over with the plaintiff. A letter addressed to the plaintiff was then dictated by the district attorney to his secretary which requested that the plaintiff call at the district attorney's office to discuss the matter. The defendant, who had been absent from the company office that morning, returned in the afternoon and was apprised by Stauffer and Doemel, Jr., of what had transpired. The defendant then went to see the district attorney. When the defendant found out that the district attorney proposed to send the letter to the plaintiff, the defendant informed the district attorney that he did not want this to be done and demanded that a warrant issue. The district attorney then directed his secretary to tear up the letter to the plaintiff which in the meantime had been typed ready to send. This incident alone is enough to support the jury's finding of malice.

Further evidence of malice is afforded by the litigation between the plaintiff and defendant arising out of the Oshkosh Poultry Products, Inc. This latter corporation had been incorporated in 1953 with a paid-in capital stock of $9,000. A Mr. and Mrs. Hummel were minority stockholders who had invested $1,500 in the enterprise while the defendant and his family had contributed the remaining $7,500 of

capital. This corporation operated for only two weeks and then ceased operations and continued dormant. Shortly after the plaintiff left the employ of the Oshkosh Storage Company he went to Mrs. Hummel and purchased six shares of her stock for a dollar per share. The defendant, as president of the corporation, refused to sign a new stock certificate issued to the plaintiff for such six shares, and the plaintiff instituted court proceedings to compel the same. The plaintiff then demanded of the defendant the right of inspection of the books. This also was denied and the plaintiff instituted a second court proceedings to secure an order directing that the plaintiff be accorded such right of inspection. Thereafter, the plaintiff and Mrs. Hummel commenced an action against the defendant for an accounting of the property and funds of such poultry corporation and this suit was pending at the time the defendant signed the criminal complaint against the plaintiff. From these facts the jury could reasonably have inferred that the criminal proceedings against the plaintiff were not instituted by the defendant because he honestly believed that the plaintiff was guilty of the offense charged, but rather from the improper motive of retaliating for these three court proceedings that the plaintiff had commenced against the defendant with respect to the poultry corporation. *Haas v. Powers* (1907), 130 Wis. 406, 410, 110 N. W. 205.

While the jury's finding of malice prevents the disclosure made to the district attorney, and the institution by the defendant of the criminal prosecution in alleged reliance upon the district attorney's advice, from establishing probable cause as a matter of law, such malice does not have the opposite effect of negativing probable cause. Prosser, Law of Torts (2d ed.), p. 652, sec. 98, well states the law on this point as follows:

". . . the plaintiff must sustain the burden of proof that the criminal proceeding was initiated or continued by the

defendant without 'probable cause.' This is true even though the defendant is found to have acted with 'malice,' for an improper purpose, since it is the part of a good citizen to bring about the prosecution of those who are reasonably suspected of crime, and the addition of a personal motive should not result in liability for performing a public obligation. The existence of such 'malice' does not create even an inference that probable cause was lacking."

However, we cannot agree with the contention made by counsel for the defendant that this court must find the defendant had probable cause as a matter of law for believing the plaintiff guilty of having embezzled the $75. We will briefly recount the evidence which we consider supports the jury's finding of want of probable cause.

From the beginning of plaintiff's employment by the Oshkosh Storage Company on December 5, 1955, until some time in February, 1956, when Doemel, Jr., became ill, Doemel, Jr., as bookkeeper, made the great majority of entries in the cashbook. This was true with respect to cash taken in by the plaintiff. Therefore, it was not the plaintiff's duty but that of Doemel, Jr., to record the $75 receipt of January 10th in the cashbook. The plaintiff testified that after taking in the $75 he either placed the same in the cash drawer or gave it to one of the Doemels. The next morning the plaintiff drew a check to the order of the depositor of the goods, who was entitled to the $75, in order to remit the same. The check stub was in the plaintiff's handwriting, but the check was signed by Doemel, Jr. Cash receipts of this kind were infrequent because most stored goods were released on credit with the depositor doing the billing direct. The act of the plaintiff, in drawing the $75 check the very next day and presenting it to one of the Doemels for signature, renders it highly unlikely that he had pocketed the $75. A bank deposit of $154 was made on January 10, 1956, by the corporation and the corresponding entry in the cashbook was as follows:

"W. G. Doemel
"Cash-Advance Chg."

The defendant testified that such $154 represented moneys he had collected for rents due himself personally, but there is still the possibility that the $75 taken in by the plaintiff was included in such $154, as the testimony of defendant in other material particulars was controverted. Furthermore, three people besides the plaintiff had access to the cash drawer. District Attorney Moore testified that the foregoing related facts caused him at the conclusion of the preliminary hearing to move dismissal of the criminal charge against the plaintiff. If these facts caused the district attorney to have such doubt as to the plaintiff's guilt as to cause him to dismiss the proceedings, surely a jury could draw the conclusion that the defendant did not have probable cause to believe the plaintiff guilty when he signed the criminal complaint.

We pass on now to the point raised by defendant that the trial court erred in admitting evidence with respect to Oshkosh Poultry Products, Inc. The facts relating to the three proceedings instituted by the plaintiff against the defendant with respect to such poultry corporation have previously been discussed herein in connection with the issue of malice. Clearly the facts relating to the institution of such proceedings were admissible on such issue. As previously pointed out, the jury could properly draw the inference from such prior ligitation that the criminal action against the plaintiff had been instituted by defendant for the purpose of retaliation.

Counsel for the defendant particularly center their attack upon the admission of Exhibit 7. This exhibit is a photostatic copy of a ledger sheet constituting part of the records of Oshkosh Poultry Products, Inc. The entries on this ledger sheet show that both the defendant and his son, Doemel, Jr., charged a salary of $50 per month from July, 1953, through

April, 1956, against the poultry corporation, the total disbursed for such salaries being $3,300. This naturally placed the defendant in a bad light before the jury in view of the undisputed testimony that such corporation had only operated for a period of from one to two weeks and then had lain dormant. The admission of such exhibit came about in this manner: The defendant volunteered, as part of an answer to a question put to him by his own counsel, the following, ". . . and after that I didn't know nothing about that poultry proposition, *because it was bankrupt.*" (Emphasis supplied.) This volunteered statement, that the poultry corporation was bankrupt, opened the door to cross-examination on that point. In such cross-examination the defendant was asked about Exhibit 7, and such exhibit was admitted over objection as part of such cross-examination. Exhibit 7 was material because it disclosed that the reason the poultry corporation was bankrupt was because the defendant and his son had paid excessive salaries to themselves. A trial court possesses fairly wide discretionary control over the scope of permissible cross-examination. We find no abuse of discretion with respect to admitting Exhibit 7 in evidence in view of the above-related surrounding circumstances.

The last point raised by the defendant is that the damages awarded by the jury, and embodied in the judgment, are excessive. At the time of plaintiff's arrest he was employed as an automobile salesman in the city of Oshkosh. News of his arrest was published in the Oshkosh Northwestern, a daily newspaper having a wide circulation in and about Oshkosh, and was broadcast over the Oshkosh radio station. There is nothing in the record to negative the fact that the plaintiff bore a previous good reputation. We do not consider the award of $4,000 compensatory damages to be excessive. Exemplary or punitive damages are imposed as a deterrent and punishment in tort actions involving a wilful wrong.

The evidence disclosed that the defendant owned assets worth in excess of $200,000. We cannot hold that an imposition of $6,000 punitive damages constituted excessive punishment to one possessed of so extensive worldly goods for maliciously instituting a criminal prosecution of another for the purpose of destroying the latter's reputation. *Spear v. Hiles* (1886), 67 Wis. 350, 357, 30 N. W. 506.

Mr. Justice TIMLIN in his scholarly opinion on the subject of exemplary damages in *Luther v. Shaw* (1914), 157 Wis. 234, 237, 147 N. W. 18, states that a court will rarely interfere with the award of exemplary damages on the ground that such award is excessive. The following comment of such opinion is particularly apropos of the instant case (pp. 238, 239):

"The maximum [criminal] penalty, together with compensatory damages for the wrongful taking of one little ewe lamb, would be quite inadequate and unsatisfactory in the hypothetical case put by Nathan to David. If some American multimillionaire should emulate the antics of Lucius Veratius with reference to personal or property rights, justice might require some deterrent not found in the criminal-law penalties plus compensatory damages. The ordinary case of aggravated newspaper libel where the actual damages are small, or the case of malicious abuse of legal process, will supply more modern instances."

*By the Court.*—Judgment affirmed.