YELK, Respondent, v. SEEFELDT and another, Appellants.

*May 8—June 6, 1967.*

274

For the appellants there were briefs by *Roberts, Boardman, Suhr & Curry,* and oral argument by *Kenneth T. McCormick, Jr.,* all of Madison.

For the respondent there was a brief by *Hall & Griffith* of Madison, and oral argument by *Laurence W. Hall.*

HANSEN, J. The defendants contend that there is no credible evidence to support the jury's finding that the defendants, in signing the application for a judicial inquiry as to the mental condition of the plaintiff acted (1) without probable cause and (2) with malice.

There are six essential elements which must be proved in a successful action for malicious prosecution. Two of them are as follows:

1. There must have been want of probable cause for the institution of the former proceeding.

2. There must have been malice in instituting the former proceeding. *Elmer v. Chicago & N. W. R. Co.* (1950), 257 Wis. 228, 43 N. W. (2d) 244.

The plaintiff in an action for malicious prosecution has the burden of proving all of the elements.

"The burden of proof is upon the plaintiff to establish all six elements; and, if he fails with respect to any one of them, the defendant prevails. There is a strong reason of public policy for thus making it rather onerous for a person to successfully maintain an action for malicious prosecution. . . ." *Gladfelter v. Doemel* (1958), 2 Wis. (2d) 635, 640, 87 N. W. (2d) 490.

Because our holding with respect to the issue of malice is dispositive of the appeal we find it unnecessary to pass on the question of sufficiency of the evidence to support the finding of want of probable cause.

When a jury verdict is attacked, we inquire only whether there is any credible evidence that, under any reasonable view supports the verdict. *Lemke v. Guse* (1965), 26 Wis. (2d) 80, 131 N. W. (2d) 893. Conversely, a jury verdict will be overturned when there is no credible evidence to support the verdict. *Smee v. Checker Cab Co.* (1957), 1 Wis. (2d) 202, 83 N. W. (2d) 492. In order to consider this case in its proper perspective, it is important to look to the prayer for relief contained in the application signed by the two defendants and the plaintiff's husband. It is contained in a form provided by the Wisconsin state department of public welfare which is used throughout the state of Wisconsin and reads as follows:

"Wherefore, your applicants pray for a judicial inquiry to determine the mental condition of the patient and for such orders of temporary or permanent nature as may be necessary."

The application in this particular case contained an allegation that the plaintiff's condition was such that safety required an immediate order for temporary detention. It contains a further averment that the applicants believed the patient to be mentally ill "because of continual streaks of violence, accuses husband of infidelity, threatened to kill husband and son."

It is well established that the institution of a proceeding to inquire into the mental health of a person is

grounds for a suit for malicious prosecution. *Manz v. Klippel* (1914), 158 Wis. 557, 149 N. W. (2d) 375. However, this court stated in *Bode v. Schmoldt* (1922), 177 Wis. 8, 12, 187 N. W. 648, 187 N. W. 1024:

"Were it not for the fact that such a proceeding is regarded as a proper basis for an action for malicious prosecution in *Manz v. Klippel [supra]*, we should be disposed to give serious consideration to the question whether the mere application for a judicial inquiry into the mental condition of an insane person affords a basis for an action for malicious prosecution. However, no doubt seemed to have been entertained as to the propriety of such an action in *Manz v. Klippel, supra,* and it may well be regarded as the settled law of the state."

A judicial inquiry as to the mental condition of one alleged to be mentally ill is controlled and governed by the provisions of ch. 51, Stats. It is essentially in the nature of an *ex parte* proceeding and once the application is executed, the direction of the proceedings is almost entirely within the province and control of the presiding judge operating within the direction and provision of the statute. There is little, if anything, the signators of the application can do once they have executed the application.

In order to establish malice on the part of the defendants in signing the application to commence a judicial inquiry to determine the mental condition of the patient, it was the plaintiff's burden to prove that they acted from motives of ill will or that their primary purpose was other than the social one of having a determination of the state of the plaintiff's mental health. *Gladfelter v. Doemel, supra.* While it is a fact that a willful and wanton disregard for the fact may be the basis for malice, such wanton and willful conduct must be of such a nature and character as to evince a hostile or vindictive motive. A jury cannot base a finding of malice upon speculation or conjecture. In order to sustain such a finding, there

must be some positive evidence in the record from which a jury may reasonably infer that the defendants instituted the proceedings for an improper motive or purpose.

We search the record to determine if there is any credible evidence from which the jury could determine that the defendants were in any way activated by malice in signing the application for the judicial inquiry.

They were acting in their official capacity as law-enforcement officers. They were ordered to the home of the plaintiff at 11 p. m. Both the plaintiff and her husband were practically unknown to them. They were in no way interlopers but were acting in their official capacity. Sec. 51.01, Stats., specifically identifies them as persons having a right to sign such an application. While we do not hold that this section grants police officers immunity, it is of significance that the legislature granted them this specific right and authority. While at the Yelk home, they observed the conduct and behavior of the plaintiff. In addition to what has been heretofore stated, they observed she engaged in physical violence. She did not heed their advice to desist. She was screaming and hollering, accusing her husband of being unfaithful and intoxicated. The defendants could detect no odor of alcoholic beverage. Their nine-year-old son was sitting in a chair shaking very badly. They saw teeth marks of a "sort of bluish effect" on Mr. Yelk's arm. The pastor told them he had seen the plaintiff bite him. Both the son and Mr. Yelk told them about the conduct of the plaintiff and threats she had made. The defendants did not institute the proceedings. They signed the application at the specific request of her husband and her pastor who was present when they were called to the courthouse to sign it. The pastor had been called to the Yelk home a total of about six times. The pastor testified that at the time the defendants signed the petition he "talked to the officers about signing the paper prior to the time they ac-

tually signed. I spoke to them from what I had experienced that I felt sincerely in my mind that at the time she was not acting according to good mental health, and it would be advisable to have her examined. . . ."

We cannot find any credible evidence that the defendants acted with a wanton or willful disregard for the facts or law in any manner whatsoever that would evince any ill will or vindictiveness toward the plaintiff or in any manner from which ill will or vindictiveness could be inferred.

It has been suggested that under certain circumstances, malice may be inferred from want of probable cause. *Elmer v. Chicago & N. W. R. Co., supra.*

However, were we to conclude the discharge of the plaintiff was *prima facie* evidence of want of probable cause, *Manz v. Klippel, supra,* and therefore sufficient credible evidence to sustain the finding of the jury as to want of probable cause, the plaintiff cannot, in this case build an inference upon an inference to create a question of fact as to both the issue of want of probable cause and the issue of malice all from the single fact of the ultimate dismissal of the proceedings. This proposition was recently considered in *Alvarez v. Retail Credit Asso.* (1963), 234 Or. 255, 264, 381 Pac. (2d) 499, 503:

"The case at bar is now in this posture: We have held that the unexplained dismissal of the original action was a fact from which a jury might have inferred that the action had been commenced without probable cause. Thus, we have said there was no error in submitting the issue of probable cause to the jury. Now the plaintiff is saying that since it was permissible to infer that there was a want of probable cause, the inference of malice is also an inference the jury may draw. While, as we have noted elsewhere, a fact proved by inference can in turn be the foundation of another inference, *Eitel v. Times, Inc.,* 221 Or. 585, 599, 352 P. 2d 485 (1960), and the jury can, therefore, draw an inference from an inference, there

is a difference between a permissible inference and mere speculation.

"The real question, when a party seeks to employ one inference as a basis for another inference, is whether the connection between the two inferences is strong enough to support the proposed intellectual exercise. If, in human experience, it is reasonable to say that when one inference is justified the second may also be justified, as it frequently may be, then there is no reason why the matter may not be submitted to the jury for that body to declare its view of the probabilities. Where, however, the evidence against pyramiding particular inferences is so strong that reasonable minds cannot draw the second inference from the first, then the court may not turn the jury loose to engage in sheer guesswork.

"In this case, to make out a case of malicious prosecution, it was not enough for the plaintiff to establish merely a basis for an inference of want of probable cause. There must also be some independent evidence of conduct other than the voluntary dismissal, from which conduct improper motives can be inferred. In other words, where the only evidence of a want of probable cause is the inference that may be drawn from the voluntary dismissal of the original action, such an inference will not support the second inference, that the defendant acted with improper motives. There must be some other direct or circumstantial evidence to support the inference of malice."

We conclude that there is no credible evidence to sustain the finding of the jury that the defendants acted with malice in instituting the proceedings. The plaintiff therefore having failed in her proof in one of the six elements necessary to successfully maintain a cause of action for malicious prosecution, the judgment must be reversed.

*By the Court.*—Judgment reversed.