MANIACI, by Guardian *ad litem*, Respondent, v. MAR-
QUETTE UNIVERSITY and others, Appellants.*

*No. 151. Argued November 30, 1970.—Decided March 5, 1971.*
(Also reported in 184 N. W. 2d 168.)

* Motion for rehearing denied, with costs, on May 4, 1971.

For the appellants (respondents on cross appeal) there were briefs by *Ray T. McCann* and *Richard A. McDermott,* both of Milwaukee, for Marquette University, Mary Alice Cannon, and June B. Steiner, and by *Irving W. Zirbel* of Milwaukee, for Dean D. Miller, and oral argument by *Mr. McDermott* and *Mr. Zirbel.*

For the respondent (cross appellant) there was a brief by *Gaines & Saichek,* attorneys, and *Irving D. Gaines* and *David A. Saichek* of counsel, all of Milwaukee, and oral argument by *Irving D. Gaines.*

HEFFERNAN, J. The defendants' appeal is premised upon the contention that the trial court erroneously permitted the trial to proceed, and the jury verdict to be rendered, on the question of false imprisonment. Defendants contend that plaintiff's only possible cause of action was for malicious prosecution, and, as a corollary to that contention, take the position that the evidence was insufficient to sustain a verdict for malicious prosecution, and that the damages were excessive.

Plaintiffs, respondents herein, take the position that the facts spelled out a cause of action for false imprisonment, that the verdict is supported by sufficient evidence, and that the damages found by the jury were reasonable.

We agree with the defendants in their contention that no cause of action has been proved under the theory of false imprisonment.

This court has defined the tort of false imprisonment as, " 'The unlawful restraint by one person of the physical liberty of another.' " *Lane v. Collins* (1965), 29 Wis. 2d 66, 69, 138 N. W. 2d 264. It is apparent, therefore, that a "lawful" restraint does not constitute false imprisonment, though it may well constitute some other tort. Restatement, *Torts* 2d, page 52, sec. 35, points out:

"(1) An actor is subject to liability to another for false imprisonment if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other . . . ."

The commentary on this section states, however, that an act which makes an actor liable for confinement by a lawful arrest is not false imprisonment, but may be malicious prosecution or abuse of process.

Restatement, *Torts* 2d, p. 69, sec. 45A, points out that, "One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment." Comment (b) to the chapter states in part:

"In order for this Section to be applicable to an arrest, it must be a false arrest, made without legal authority. One who instigates or participates in a lawful arrest, as for example an arrest made under a properly issued warrant by an officer charged with the duty of enforcing it, may become liable for malicious prosecution, as stated in Chapter 29, or for abuse of process, as stated in Chapter 31, but he is not liable for false imprisonment, since no false imprisonment has occurred."

Prosser points out that no cause of action for false imprisonment will lie:

"If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized . . . . He is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose." Prosser, *Law of Torts* (hornbook series, 3d ed.), p. 62, sec. 12.

1 Harper and James, *Law of Torts*, p. 232, sec. 3.9, states: "If it [confinement] has been extra judicial, without legal process, it is false imprisonment."

In the instant case it is clear that the type of tort that the concept of "false imprisonment" encompasses did not take place. There was not an *"unlawful"* restraint of freedom.

Since the plaintiff Saralee was confined pursuant to the mandate of sec. 51.04 (1), Stats., and by a petition that conformed, prima facie at least, to the jurisdictional requirements of the statute, the confinement was pursuant to law. She was arrested by legal process in the sense that the document executed by the defendants under the statute conferred authority or jurisdiction upon the police officers to take physical custody of the plaintiff's person and to deliver her to the mental hospital.

Although the tort committed was not that of false imprisonment as contended by the plaintiff, neither can we agree with defendants' contention that the insult to plaintiff's liberty can properly be denominated as "malicious prosecution." The reason why defendants assert plaintiff's only cause of action is malicious prosecution is clear, for defendants point out, after setting up the "strawman" of malicious prosecution, that plaintiff cannot prove significant facts to maintain her action. In this contention they are correct, but their argument proves too much in that, by so doing, they demonstrate that plaintiff's cause is not one of malicious prosecution, irrespective of the factual lacunae upon which defendants would rely.

Harper and James, *supra,* page 300, sec. 4.1, states:

"The tort of malicious prosecution of criminal proceedings occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefore, if the proceedings terminate favorably for the person thus prosecuted."

Prosser, *supra,* page 852, sec. 113, explains that the cause of action for malicious prosecution is designed to afford redress for invasions of the right to be free from unjustifiable litigation. Four elements originally were requisite to a cause of action for malicious prosecution:

"1. A criminal proceeding instituted or continued by the defendant against the plaintiff.
"2. Termination of the proceeding in favor of the accused.
"3. Absence of probable cause for the proceeding.
"4. 'Malice,' or a primary purpose other than that of bringing an offender to justice." Prosser, *supra,* p. 853, sec. 113.

Prosser demonstrates that malicious prosecution lies only when a plaintiff's interests are invaded by an ostensibly legal process. The essence of the tort is the "perversion of proper legal procedure." (P. 853) He distinguishes it from false imprisonment in that the latter tort occurs only when a plaintiff is arrested or confined without a warrant or legal authority. As stated above, the tort alleged here is clearly not that of false arrest. It is equally clear that the facts do not spell out an action for malicious prosecution.

In *Elmer v. Chicago & N. W. Ry. Co.* (1950), 257 Wis. 228, 231, 43 N. W. 2d 244, this court stated the six essential elements of malicious prosecution:

"1. There must have been a prior institution or continuation of some regular judicial proceedings against the plaintiff in this action for malicious prosecution.

"2. Such former proceedings must have been by, or at the instance of, the defendant in this action for malicious prosecution.

"3. The former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution.

"4. There must have been malice in instituting the former proceedings.

"5. There must have been want of probable cause for the institution of the former proceedings.

"6. There must have been injury or damage resulting to the plaintiff from the former proceedings."

It should be noted that Wisconsin takes the position that the unjustifiable litigation need not be criminal in nature—that any prior regular but unjustifiable judicial proceedings, civil or criminal, will suffice.

In *Yelk v. Seefeldt* (1967), 35 Wis. 2d 271, 277, 278, 151 N. W. 2d 4, we specifically pointed out that "the institution of a *proceeding* to inquire into the mental health of a person is grounds for a suit for malicious prosecution." (Emphasis supplied.)

In the instant case, however, elements that must be present to characterize the action as one of malicious prosecution are absent.

Here, unlike the situation in *Yelk v. Seefeldt, supra,* the petition was never presented to a court, and no order of a court ever provided for the institution of a mental inquiry. Whatever proceedings antedated this action did not terminate in favor of the plaintiff. In the instant case the defendants simply chose not to proceed and released Saralee from the mental hospital.

There was no "malice" in the conduct of the defendants that led to Saralee's confinement in a mental ward. *Yelk v. Seefeldt, supra,* page 280, referred to the element of "malice" as one that would be demonstrated by evidence as "wanton or willful disregard for the facts or law in [a] manner . . . that would evince any ill will or vindictiveness."

However the conduct of the defendants may be described, it was not malicious in the sense referred to in *Yelk*. The evidence showed defendants had a genuine concern for the plaintiff's welfare, and they prevented her from leaving the university to protect what they conceived to be Saralee's own best interests.

Other elements of malicious prosecution are arguably present. Although the plaintiff would contend that no probable cause existed for the confinement, and defendants would argue that no injury or damage resulted as the result of the occurrence, these are determinations that need not be made in view of the disposition we make of this appeal. Suffice it to say that the plaintiff failed to properly prove up a cause of action in either false imprisonment or malicious prosecution. We, however, do not for that reason dismiss her complaint, for we are satisfied that the proof submitted would, skeletally at least, support an alternate cause of action—that of abuse of process.

Abuse of process is defined by the Restatement, *Torts*, page 464, sec. 682, in the following terms:

"One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby."

Prosser, *supra*, page 876, sec. 115, points out that abuse of process supplies a remedy that is denied under the theory of malicious prosecution. Abuse of process lies even in those instances where:

". . . legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed."

The gist of the tort is:

". . . misusing or misapplying process justified in itself for an end other than that which it was designed

to accomplish. The purpose for which the process is used . . . is the only thing of importance." Prosser, *supra,* p. 876, sec. 115.

Malice is not required. Probable cause does not defeat the plaintiff's action, and there need not have been a termination in the plaintiff's favor.

Our appraisal of the evidence leads to the conclusion that the plaintiff's proof spells out a cause of action for abuse of process. It is clear that the purpose of all the individual defendants was not essentially to have inquiry into Saralee's mental condition, though Dean Cannon, at least, was concerned about her "illogical" state of mind. Rather, the purpose of the three defendants was to detain her until such time as her parent had been notified and he had either given his permission for Saralee to leave or had directed Saralee to stay at school. The purpose was to have her physically detained until the problem of her withdrawal from school was resolved to the satisfaction of the school authorities. Dr. Miller acknowledged that he told Saralee he could not release her without her parent's permission. To assure her nonrelease until that time, he struck upon the idea of using the statute that permits the temporary detention of persons who demonstrate symptoms of dangerous mental illness.

On the facts before us, this was a perversion of the purpose of the law and constituted an abuse of process. After Saralee's father was contacted, Saralee was released—all interest in her mental condition vanished, and the pretense of proceeding with a mental inquiry was abandoned.

The trial judge made the specific finding that the purpose of the petition was to detain the plaintiff and not to examine the condition of her mental health. These facts, which appear in the record on the instant appeal, are facts which would support a cause of action

for abuse of process. However, the lawsuit was not tried upon that theory, and the jury was not instructed in respect to factual issues that must be resolved in the trial of an abuse-of-process tort.

Sec. 251.09, Stats., provides that:

"251.09 **Discretionary reversal.** In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

As viewed in the light of this statute, it is apparent that the real controversy has not been tried and that the liability of the defendants, as applied to these facts, was founded upon an erroneous view of the law, an error in which both plaintiff and defendants participated, since neither conceived of the case as involving a tort other than false imprisonment or malicious prosecution.

It is apparent that the defendants had no opportunity to defend on the basis of legal theories that are available to defendants in abuse-of-process actions. Moreover, the nature of both plaintiff's and defendants' proof in an action brought solely for abuse of process might well be different and of an emphasis at variance from that presented at this trial. It is, therefore, the conclusion of the court the interests of justice require that the judgment be reversed and the cause remanded for a new trial, and that, prior to such new trial, the plaintiff be

required to amend her complaint, to allege, if she can, a cause of action for abuse of process. Inasmuch as we do not dismiss the complaint, it remains viable and may be amended on remand.

The portion of plaintiff's cause of action, insofar as it relates to false imprisonment, is dismissed. While we have used the undisputed facts of record and facts found by the trial judge as verities for the purpose of this appeal, no such findings of fact on this appeal shall be conclusive or res judicata on any subsequent retrial of this case. The parties may, in the interest of reducing the time and expense of subsequent retrial, of course, stipulate to the accuracy of any of the testimony contained in the present record.

Inasmuch as a new trial on all issues is required, we will not consider the contention of the plaintiff that the damages were inadequate or the contention of the defendants that they were excessive. Nor will we comment on the contention of defendant Marquette University that the evidence was insufficient to find that it had ratified its agents' tort, and therefore not obliged to answer in punitive damages.

We should point out, however, that defendants' assertion that Marquette University, as an eleemosynary institution, is not liable for the intentional torts of its agents finds no support in the Wisconsin law. Under Wisconsin law, the general rule is, subject to the usual rules of agency, that an employer is vicariously liable for the torts of his employees. While, in 1917, in *Morrison v. Henke* (1917), 165 Wis. 166, 160 N. W. 173, this court created an exception and laid down the rule which persisted until 1961 that a charity is exempt from liability for the negligent torts of its employees, defendants have failed to point out any rule of this jurisdiction or any other where an exception has ever been created to relieve charitable institutions of the intentional torts of their servants under circumstances where the principal, not

a body entitled to immunity, would otherwise sustain vicarious liability. No policy reasons are urged by defendants, and none occur to us, why the policy of vicarious liability adopted in *Kojis v. Doctors Hospital* (1961), 12 Wis. 2d 367, 107 N. W. 2d 131, 107 N. W. 2d 292, ought not apply to intentional torts under usual agency rules.

We conclude that Marquette University cannot escape liability on the ground urged.

*By the Court.*—Judgment is reversed under the provisions of sec. 251.09, Stats., and cause is remanded for such other and further action and proceedings as may be consistent with this opinion and for a new trial. No costs are to be taxed on this appeal.