MEYER, Appellant, v. EWALD and another, Respondents.

*No. 269. Argued November 27, 1974.—Decided December 20, 1974.*
(Also reported in 224 N. W. 2d 419.)

172

For the appellant there was a brief and oral argument by *William J. Campbell* of Menomonee Falls.

For the respondents there was a brief by *James P. Brennan* and *Simarski, Goodrich, Brennan & Stack,* all of Milwaukee, and oral argument by *James P. Brennan.*

ROBERT W. HANSEN, J. While there are six essential elements which must be proved in this state in a successful action for malicious prosecution,[1] in the case before us, as is usual,[2] the dispute is as to two of the six:

[1] *Yelk v. Seefeldt* (1967), 35 Wis. 2d 271, 276, 151 N. W. 2d 4, citing *Elmer v. Chicago & N. W. R. Co.* (1950), 257 Wis. 228, 231, 43 N. W. 2d 244. *See also: Pollock v. Vilter Mfg. Corp.* (1964), 23 Wis. 2d 29, 37, 126 N. W. 2d 602.

[2] *Hajec v. Novitzke* (1970), 46 Wis. 2d 402, 415, 175 N. W. 2d 193, this court observing: "The specific elements necessary to establish a cause of action for malicious prosecution are well established. In the instant case, as is usual, the most hotly contested elements are lack of probable cause and malice."

(1) Whether there was malice in the instituting of criminal proceedings; and (2) whether there was a want of probable cause for instituting such proceedings. Each of these two elements, both required to be proved by plaintiff in order for him to prevail,[3] will be separately discussed.

### Requirement of malice.

Malice, which gives the action its name, must be established in any successful lawsuit for malicious prosecution. The plaintiff here had the burden of proving that the defendant acted "maliciously."[4] The dismissal of the former proceeding involved is not sufficient to create a question of fact as to the existence of malice.[5] There must also be " 'some independent evidence of conduct other than the voluntary dismissal, from which conduct improper motives can be inferred.' "[6] In this state a

[3] *Gladfelter v. Doemel* (1958), 2 Wis. 2d 635, 640, 87 N. W. 2d 490, this court holding: "The burden of proof is upon the plaintiff to establish all six elements; and, if he fails with respect to any one of them, the defendant prevails. There is a strong reason of public policy for thus making it rather onerous for a person to successfully maintain an action for malicious prosecution. . . ." Quoted in *Yelk v. Seefeldt, supra,* footnote 1, at page 277.

[4] *Yelk v. Seefeldt, supra,* footnote 1, at page 276, citing *Elmer v. Chicago & N. W. R. Co.* (1950), 257 Wis. 228, 43 N. W. 2d 244.

[5] *Id.* at page 280, this court stating: "However, were we to conclude the discharge of the plaintiff was *prima facie* evidence of want of probable cause, *Manz v. Klippel* [(1914), 158 Wis. 557, 149 N. W. 375], and therefore sufficient credible evidence to sustain the finding of the jury as to want of probable cause, the plaintiff cannot, in this case build an inference upon an inference to create a question of fact as to both the issue of want of probable cause and the issue of malice all from the single fact of the ultimate dismissal of the proceedings. . . ."

[6] *Id.* at page 281, quoting *Alvarez v. Retail Credit Asso.* (1963), 234 Ore. 255, 264, 381 Pac. 2d 499, 503, holding: " 'In this case, to make out a case of malicious prosecution, it was not enough

person instituting a criminal prosecution is actuated by malice if (1) ". . . he is found to have acted chiefly from motives of ill will," or (2) ". . . if his primary purpose was something other than the social one of bringing an offender to justice. . . ." [7] The first category can be termed "malice in fact," the second "malice at law." Each of the two categories will be reviewed separately.

*"Malice in fact."* In defining a plaintiff's burden in proving that a defendant in a malicious prosecution action acted from motives of ill will or malice in fact, this court in *Yelk* framed the question to be answered as whether ". . . the defendants acted with a wanton or willful disregard for the facts or law in any manner whatsoever that would evince any ill will or vindictiveness toward the plaintiff or in any manner from which ill will or vindictiveness could be inferred." [8] It made clear that: ". . . While it is a fact that a willful and wanton disregard for the fact may be basis for malice, such wanton and willful conduct must be of such a nature and character as to evince a hostile or vindictive motive." [9] It added: "A jury cannot base a finding of malice upon speculation or conjecture." [10] As to the jury finding of malice in the case before us, the trial court held that: "There is no express malice in the evidence in this record." While stating ". . . if I were to change any answer in the jury verdict, I would think that the answer to be changed would be the one with respect to malice, . . ." the trial

for the plaintiff to establish merely a basis for an inference of want of probable cause. There must also be some independent evidence of conduct other than the voluntary dismissal, from which conduct improper motives can be inferred. . . .' "

[7] *Gladfelter v. Doemel, supra,* footnote 3, at page 642, citing Prosser, *Law of Torts* (2d ed.), p. 659, sec. 98.

[8] *Yelk v. Seefeldt, supra,* footnote 1, at page 280.

[9] *Id.* at page 278.

[10] *Id.* at page 278.

court let the jury answer stand, stating: "At best there is the inference of malice that arises from, first, the question of did Meyer [plaintiff] misrepresent the model year of his car, and the succession of events that occurred thereafter," referring to the letter to plaintiff asking for the $500 difference in car allowance, and the return visit to secure a criminal warrant, earlier refused. As to the first, the question as to misrepresentation, the trial court held that defendant Ewald did not know that plaintiff had not misrepresented the model year of his car, and that defendant was ". . . in fact victimized by his own salesman. . . ." Malice in fact cannot derive from a fact not known, and the letter sent and visits made to the district attorney's office fall short of permitting an inference that malice or vindictiveness motivated either sending the letter or seeking the warrant, particularly with the trial court finding, and correctly so, ". . . the evidence without contradiction whatsoever that Ewald knew not that the model year had not been misrepresented; thought that it was, and proceeded upon that set of facts in his effort to further the prosecution of Mr. Meyer. . . ." However, finding no basis in this record for a finding of malice in fact, express or implied, takes us only halfway around the track that must be traversed as to malice.

*"Malice at law."* Even if defendants cannot here be found to have acted from motives of actual ill will or vindictiveness toward this plaintiff, there remains the question of whether there was here positive evidence from which the jury might reasonably infer that the defendants instituted the former proceedings ". . . for an improper motive or purpose," [11] meaning their ". . . primary purpose was something other than the social one of bringing an offender to justice. . . ." [12] As an ex-

---

[11] *Id.* at page 279.

[12] *Gladfelter v. Doemel, supra,* footnote 3, at page 642, cited and followed in *Yelk v. Seefeldt, supra,* footnote 1, at page 278.

ample, where it was claimed that a prosecution was instituted for the purpose of collecting a debt, this court termed such case one ". . . of a somewhat different type, . . ." [13] and stated the rule ". . . as to malice in this type of case. . ." to be as follows:

" 'If the criminal law be set in motion for the purpose of collecting a debt or compelling the delivery of property, or to accomplish some other ulterior and unlawful purpose, then it is begun maliciously as much as though inspired by hatred or revenge. Whether the prosecution in a given case be malicious or not is a mixed question of fact and law. The jury are to determine the question of fact, namely, whether it was begun for a vindictive, ulterior, or unlawful purpose, and when they decide that question in the affirmative the law steps in and says that in that case there was legal malice, and if the jury also find lack of probable cause the law then says that the cause of action is complete.' " [14]

The letter sent and what the trial court termed the "sequence of events" might well warrant, but not require, an inference by the jury that the criminal law was here set in motion for the purpose of collecting a debt or compelling the delivery of property. But substituting the right to infer that such was here the case, rather than a finding of malice in fact, encounters two roadblocks, both in the *Peters* decision. (1) This court, in *Peters,* held that as to such type of case ". . . instead of the usual malice question, inquiry should have been made of the jury as to whether the proceeding was begun for the purpose of collecting a debt." [15] No such request for such special verdict question was made, and no such ques-

[13] *Peters v. Hall* (1953), 263 Wis. 450, 452, 57 N. W. 2d 723.

[14] *Id.* at pages 452, 453, quoting *Eggett v. Allen* (1903), 119 Wis. 625, 630, 96 N. W. 803. *See also: Strehlow v. Pettit* (1897), 96 Wis. 22, 28, 71 N. W. 102, this court holding: ". . . a criminal prosecution for the purpose of collecting a debt, or to secure some other private or ulterior benefit, is evidence of malice, and may, in certain cases, be conclusive. . . ."

[15] *Id.* at page 453.

tion was submitted. (2) This court, in *Peters,* held that in this type of case ". . . instructions . . . based upon the ordinary case of malicious prosecution . . . are not all applicable to a case where criminal proceedings are instituted for the collection of a debt." [16] This holding might suggest ordering a new trial in the interest of justice because the issue had not been tried, but would not support affirmance of the finding of malice as here made. The route charted in *Peters* was not followed by the plaintiff here, and, since affirmance is required on the absence of the additional element of lack of probable cause, there is no reason to inquire further whether it could be reopened now.

*Absence of probable cause.*

As to the essential requirement in malicious prosecution cases that absence of probable cause for instituting the former criminal proceedings be established, the jury here found that: (1) The defendant Ewald, in swearing to the complaint charging plaintiff with the commission of a crime, acted ". . . without probable cause to believe the plaintiff . . . guilty of such charge;" and (2) that the defendant Ewald did ". . . fully and fairly state all of the material facts within his knowledge and all the information possessed by him to his attorney." Both findings, and the legal consequence of their being concurrently made, will be discussed.

*Without probable cause to believe.* In discussing the quantum of evidence required or necessary to a determination that a private party had or did not have "probable cause" to believe that another person committed a crime, this court, in *Hajec,* said: " '. . . we are concerned with the quantum of evidence that would lead an

---

[16] *Id.* at page 453.

ordinary and reasonable layman in the circumstances, to believe that the plaintiff committed a crime. . . .' " [17] And, in *Hajec*, this court reiterated that: ". . . where, as here, a defendant.in a criminal prosecution is discharged, that is prima facie evidence of want of probable cause. . . . a prima facie showing of lack of probable cause." [18] Here the dismissal of the criminal charge on the ground of defective complaint was something less than an acquittal following trial. The circuit court, dismissing the criminal complaint, did not hold that there was no misrepresentation as to the model year of the trade-in car, but held that ". . . when the physical object is before a party experienced in the field, he cannot say [he] relied upon verbal allegation. . . ." However, even if such dismissal is more analogous to a dismissal on motion of a prosecutor, that has been held sufficient to permit the inference or conclusion that the person signing the criminal complaint did not have probable cause so to do. [19] Such prima facie showing of lack of probable cause is here sufficient to warrant the jury finding that the defendant acted without probable cause.

[17] *Hajec v. Novitzke, supra,* footnote 2, at page 415, quoting *Pollock v. Vilter Mfg. Corp.* (1964), 23 Wis. 2d 29, 41, 42, 126 N. W. 2d 602.

[18] *Id.* at page 415.

[19] *Gladfelter v. Doemel, supra,* footnote 3, at page 646, this court holding: "If these facts caused the district attorney to have such doubt as to the plaintiff's guilt as to cause him to dismiss the proceedings, surely a jury could draw the conclusion that the defendant did not have probable cause to believe the plaintiff guilty when he signed the criminal complaint." *See also: Messman v. Ihlenfeldt* (1895), 89 Wis. 585, 591, 62 N. W. 522, this court stating: ". . . The weight of authority seems to be that the abandonment of the criminal prosecution is *prima facie* evidence of the absence of probable cause. . . ." *See also: Neumann v. Industrial Sound Engineering, Inc.* (1966), 31 Wis. 2d 471, 477, 143 N. W. 2d 543, dealing with dismissal of an involuntary bankruptcy petition.

*Full and fair disclosure.* However, the jury here also found a full and fair statement of all material facts within defendant's knowledge and all the information possessed by him to his attorney before he signed the criminal complaint. This finding of full and frank disclosure to his legal counsel is clearly supported by the evidence in this record. Defendant Ewald testified that he never met or talked to plaintiff prior to the trial; that he received all of his information concerning the transaction from his salesman and new car department manager; that he had no reason to disbelieve his employees; that to his knowledge plaintiff was unresponsive to defendants' efforts to resolve the matter; that he related all of the information within his knowledge to his attorney; and that he relied on his attorney's advice in swearing out the complaint. The jury finding of full and fair disclosure must be upheld. There is nothing in this record to indicate that the defendant did not fully and fairly disclose all facts within his knowledge to his attorney, or that he did not proceed on the advice of his legal counsel.

Given both the jury finding of absence of probable cause and the finding of full and frank disclosure to legal counsel, *Hajec* controls. In *Hajec,* this court held: "The fact that the defendants acted on the advice of their attorney after a full and fair disclosure to him, and that the district attorney [*Note:* Here the examining magistrate], by later issuing the summons, put his imprimatur on the proceedings, leads to the conclusion that the defendants had probable cause, as a matter of law, for their actions. Thus, the defendants are insulated from liability for malicious prosecution because one of the essential elements—lack of probable cause—was missing." [20]

The reason for this clearly mandated conclusion is set forth, in *Hajec,* from this quotation from an earlier

[20] *Hajec v. Novitzke, supra,* footnote 2, at page 417.

case: " 'In *Brinsley v. Schulz* (1905), 124 Wis. 426, 102 N. W. 918, this court pointed out one of the most efficient ways of negating a *prima facie* showing of lack of probable cause was to prove the action was brought upon advice of counsel, particularly by a proper prosecuting officer if the action was a criminal matter, *after a full statement to him of all the facts known to the defendant*. . . . It is for counsel to evaluate the weight and sufficiency of the facts and the advice of a reputable counsel in such cases, even if ultimately proved wrong, supplies the defense to lack of probable cause. . . .' " [21] We follow *Hajec* to apply here what this court has termed: ". . . the generally recognized rule that the advice of an attorney, whom a client has no reason to believe to be personally interested, is conclusive of the existence of probable cause for initiating a criminal proceeding in reliance upon such advice when it is sought in good faith and given after a full disclosure of the facts within the client's knowledge and information. . . ." [22]

Plaintiff counters with a statement, in *Gladfelter*, that reads: "The reason why a verdict cannot be directed in favor of the defendant on the issue of fair disclosure and reliance upon the advice of counsel, where there is evidence present from which a jury might infer malice, is because malice destroys such defense. . . ." [23] At the directed verdict stage of the proceeding, read in the light of the preceding paragraph,[24] applying solely to

[21] *Id.* at page 416, quoting *Neumann v. Industrial Sound Engineering, Inc., supra*, footnote 19, at page 478. (Emphasis in opinion.)

[22] *Neumann v. Industrial Sound Engineering, Inc., supra*, footnote 19, at page 477.

[23] *Gladfelter v. Doemel, supra*, footnote 3, at page 642.

[24] *Id.* at pages 641, 642, the paragraph reading: "The fact, that the defendant in a malicious-prosecution action did make a fair disclosure to an attorney and institute the prosecution upon his advice, undoubtedly tends to negative malice. However, where

the issue of whether there was in fact a full and fair disclosure and a proceeding on advice of counsel, we would hold the statement not to conflict with the correct statement of the law, in the same opinion, that: "In further keeping with this public policy, if the defendant in a malicious-prosecution action has instituted a criminal proceeding against the plaintiff upon the advice of counsel after making a full and fair statement of the facts within the defendant's knowledge, honestly believing the plaintiff to be guilty, this affords the defendant a complete defense as a matter of law. . . ."[25] However, the four words, "malice destroys such defense," excerpted and standing alone, might be read to suggest that wherever malice is found in a malicious prosecution case, which is a required finding in all malicious prosecution cases, the defense of full and fair disclosure is "destroyed." That would require a confession of error as to the holding in *Hajec*, where malice was left undisturbed, and the judgment was reversed, holding that full and fair disclosure to counsel and proceeding on advice of counsel

a trial court is faced with the problem of whether to direct a verdict for the defendant in such a situation, on the ground that such fair disclosure and reliance upon advice of an attorney establishes probable cause as a matter of law, the court is not concerned with whether the disclosure and reliance upon advice of counsel also tend to negative malice. In considering such question of whether to direct a verdict, the court must review the evidence to see if there is any which affords a reasonable basis for inferring malice. If there is no evidence upon which a jury might base a finding of malice, and the facts are not in dispute that a full and fair disclosure was made to an attorney and the prosecution instituted upon his advice, then it is the duty of the court to direct a verdict for the defendant. . . ."

[25] *Id.* at page 640, the court adding (p. 641): ". . . The advice of prosecuting attorneys affords the same cloak of protection as does advice of private practitioners." Citing Prosser, *Law of Torts* (2d ed.), p. 655, sec. 98, and annotations to 10 A. L. R. 2d 1215.

compelled the conclusion that defendants had probable cause to institute criminal proceedings. The holding of *Hajec* is affirmed, and the statement "malice destroys such defense" in *Gladfelter* is withdrawn as a possibly misleading phrasing of what was intended to be said.

*Availability of defense to corporate defendant.*

Plaintiff contends that, even if the defense of full and fair disclosure and proceeding on advice of counsel is here available to defendant Ewald, it is not available to the defendant corporation, Mayfair Chrysler-Plymouth, Inc. This contention accepts the trial court's holding, in its decision on motions after verdict, that defendant Ewald ". . . did not know that Meyer [the plaintiff] had not misrepresented the model year of his car, and that Ewald was in fact victimized by his own salesman. . . ." With the salesman an employee and agent of the corporate defendant, it is argued that his acts and knowledge are attributable to the corporation. There are two reasons for not upholding this contention. The first is that the argument is raised for the very first time on appeal. This court has consistently held: ". . . as a matter of judicial policy, we decline to consider legal arguments that are posed for the first time on appeal and which were not raised in the trial court." [26] The second reason is that the action against the corporate defendant rests upon the act of its president, codefendant Ewald, in instituting criminal proceedings against the plaintiff. The acts of the corporate officer and codefendant, giving rise to a defense in an action for malicious prosecution, are not unavailable to the corporate defendant. In an action involving defamation, an eastern state court held: ". . . Defendant corporation can only act through and by

[26] *Estate of Scherffius* (1974), 62 Wis. 2d 687, 696, 697, 215 N. W. 2d 547.

its agents. It, as a corporation, is liable, if at all, on the theory of *respondeat superior*. If the agent who committed the tort would not have been personally liable for the words he uttered as an agent of the corporation, then the corporation for whom the agent at the time was acting is not liable." [27] In two Wisconsin cases, one involving libel and one slander, similar reasoning appears to be followed [28] indicating that a defense available to the officer of a company, in a libel or slander action, should also be available to a corporate codefendant. On the facts here, in an action for malicious prosecution, we would hold that the defense of full and fair disclosure and proceeding on advice of counsel was and is available to the corporate defendant as well as to the codefendant, its president and here sole owner.

*By the Court.*—Judgment affirmed.

[27] *Federal Land Bank v. Birchfield* (1939), 173 Va. 200, 225, 3 S. E. 2d 405.

[28] *See: Johnson v. Rudolph Wurlitzer Co.* (1928), 197 Wis. 432, 440, 222 N. W. 451, where defendant company and its manager were sued for slander by a former employee, this court holding: "Assuming, therefore, that there was no foundation in fact for the statements found by the jury to have been made concerning plaintiff by Reinwald in his capacity as manager for the respondent, the record, as we view it, is devoid of sufficient proof as against respondent company to support a finding by jury or trial court that the conditional privilege was destroyed, and the motion of respondent company for judgment in its favor notwithstanding the verdict should have been and now must be granted." *See also: Lehner v. Associated Press* (1934), 215 Wis. 254, 260, 254 N. W. 664, where plaintiff brought a libel suit against a company and one of its employees, this court holding: "Such communications have uniformly been held to be conditionally privileged. If so privileged as to the company they are also so privileged as to the person writing them."