M. BRYCE & ASSOCIATES, INC., Plaintiff-Appellant, v. GLADSTONE, and another, d/b/a Arthur Young & Co., Defendants-Respondents: MAYO, and others, Defendants.

Court of Appeals

*No. 77–791. Submitted on briefs December 13, 1978.—
Decided January 29, 1979.*
(Also reported in 276 N.W.2d 335.)

For the plaintiff-appellant there were briefs by *Jack L. Goodsitt* of Milwaukee, Wisconsin.

For the defendants-respondents there were briefs by *Thomas O. Kloehen* and *Patricia K. Ballman* of *Quarles & Brady,* of Milwaukee.

Before Decker, C.J., Cannon, P.J., and Robert W. Hansen, Reserve Judge.

DECKER, C.J.   M. Bryce & Associates, Inc., commenced this action seeking to recover against the respective defendants for breach of contract, appropriation of proprietary information and unjust enrichment.

According to the allegations of the complaint, Bryce is a Cincinnati-based software company engaged in the selling of a product bearing the registered trademark "Pride." "Pride" is a complete methodology for the de-

sign, development and implementation of an information system. At the request of defendant Harry D. Mayo, III, an employee of Arthur Young & Co., who was acting as a consultant to Harley-Davidson Motor Co., Bryce made a presentation of "Pride" to Mayo, John E. Chapel, an employee of Harley-Davidson, and other employees of the defendants Harley-Davidson and Arthur Young.

Prior to the presentation, Mayo and Chapel executed an agreement by which they were obligated not to disclose or use the "proprietary information contained" in the "Pride" presentation. Bryce alleges that the details of the "Pride" methodology, which were fully discussed in the presentation, were entitled to trade secret protection.

The complaint alleges that subsequent to this presentation, contrary to the provisions of the nondisclosure agreement, Mayo and Chapel developed, designed and implemented a manual for the use and benefit of Harley-Davidson which duplicated the procedures, forms and standards set forth in the plaintiff-appellant's product.

Harley-Davidson and Chapel answered the complaint with general denials. William Gladstone and Rodney Lang, d/b/a Arthur Young & Co., answered with general denials and also counterclaimed alleging *inter alia* that:

by making the accusations contained in plaintiff's complaint . . . and by bringing this action [the plaintiff]:
22. is . . . attempting to induce the breach of contract between Arthur Young & Co. and Harley-Davidson Motor Co. Inc. and is competing unfairly with Arthur Young & Co.
23. is . . . interfering with the contract and ongoing business relationship between Arthur Young & Co. and Harley-Davidson Motor Co., Inc.
24. . . . intends to force the disclosure to plaintiff of Arthur Young & Co's [sic] data processing documentation standards manual and management reporting system

so plaintiff can make use of this material in its own business; intends to coerce Harley-Davidson Motor Co., Inc. to purchase plaintiff's methodology for system design and implementation known as "PRIDE"; intends to injure the business of Arthur Young & Co. and eliminate or reduce its competition to plaintiff's business.

Bryce filed a reply containing a general denial of the pertinent allegations of the counterclaim.

The record reflects that on March 24, 1977, the trial court, on stipulation of counsel, granted Arthur Young & Co.'s motion to amend its counterclaim.[1] Bryce was given until March 30, 1977, to serve and file a responsive pleading to the counterclaim. Pursuant to that order, Arthur Young & Co. apparently served an amended counterclaim which simply restated the original counterclaim (the relevant portion of which are quoted above) and a "supplemental" counterclaim.[2]

Bryce interposed a demurrer[3] to the amended counterclaim, maintaining that the counterclaim did not state facts sufficient to constitute a cause of action, and moved the court for an order sustaining the demurrer. The trial

[1] The record indicates the motion was interposed on July 19, 1976.

[2] Although we have examined the entire record before this court, we are unable to locate or identify the amended counterclaim which was served. Appellant's brief indicates that the amended counterclaim which was served "contained the original counterclaim and a supplemental counterclaim." The trial court's memorandum decision, dated September 7, 1977, indicates that the amended counterclaim included the original counterclaim and an additional claim for declaratory relief on the basis that no confidential or secret information in which Bryce could properly claim a proprietary interest was contained in "Pride." It maintained that the nondisclosure agreement is an illegal restraint of trade. According to respondent's brief, this "supplemental" counterclaim "is not the subject of this appeal."

[3] This case is governed by ch. 263, Stats. (1973), having been commenced prior to January 1, 1976. See sec. 801.01(3)(a), Stats. (1975).

court, agreeing with the contentions of Arthur Young & Co., held that the counterclaim stated facts sufficient to constitute a cause of action for abuse of process and overruled the demurrer.

Pending a determination on the motion to sustain the demurrer, Bryce served on Arthur Young & Co. written interrogatories requesting production of partnership tax returns for 1975 and 1976, financial statements of the partnership for the years 1975, 1976 and 1977. Arthur Young & Co. objected to the interrogatories.

After overruling the demurrer, the trial court ordered the partnership tax returns and financial statements produced. Arthur Young & Co. subsequently brought a motion to review the order to produce. The trial court then reversed its order to produce and denied Bryce's motion to compel discovery upon the basis of an affidavit of counsel for Arthur Young & Co. which stated he was authorized to waive and release "any claim for loss of income or business in the counterclaim" and "any claim for loss of net worth arising out of their counterclaim." The affidavit further stated that it would claim as damages "only expenditures of monies actually made as a result of plaintiff's actions."

Bryce subsequently moved the court to reconsider its order overruling the demurrer to the counterclaim. It maintained that Arthur Young & Co.'s waiver of damages clearly made the counterclaim demurrable. The trial court, in a memorandum decision dated April 25, 1978, specifically held that the counterclaim stated a cause of action for abuse of process, and entered an amended order affirming its overruling of the demurrer. From this order, dated May 4, 1978, Bryce appeals.

The following issues are raised by the parties and must be resolved to dispose of this appeal:

1. Is the trial court's order of May 4, 1978, affirming its early order overruling Bryce's demurrer to the counterclaim, appealable?

2. Was the trial court correct in overruling the demurrer of Bryce to the counterclaim?

3. Can a counterclaim for abuse of process, based upon the maintenance of the action encompassed in the complaint, be tried contemporaneously with the main action?

## 1. APPEALABILITY OF THE ORDER

In the trial court, Bryce brought the motion to review the initial order overruling the demurrer under sec. 269.46(1), Stats. (1973), which provides:

(1) The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation or other proceeding against him obtained, through his mistake, inadvertence, surprise or excusable neglect and may supply an omission in any proceeding.

Appellant maintains in this court that the order overruling the demurrer was obtained against him through surprise. It maintains the surprise arose from the respondent's subsequent waiver of claims for loss of income, business or net worth.

Plaintiff brought this appeal in a timely fashion from the order affirming the original order. The time for appeal from the original order had expired when this appeal was perfected.[4]

Regarding the appealability of orders entered pursuant to motions to review previous orders under sec. 269.46, Stats. (1973), the Wisconsin Supreme Court has stated:

We are of the opinion, therefore, that although a party may move the trial court to reconsider its orders or judgments under sec. 269.46(3), Stats., he must present issues other than those determined by the order or judgment for which review is requested in order to appeal from the order entered on the motion for reconsideration. *Ver*

---

[4] *See* sec. 274.01, Stats. (1973).

*Hagen v. Gibbons,* 55 Wis.2d 21, 26, 197 N.W.2d 752 (1972).

We hold that an issue other than that which had been determined by the previous order for which review was requested was presented. Although the trial court was again confronted with the question whether the counterclaim stated facts sufficient to constitute a cause of action, that question was presented in light of Arthur Young & Co.'s subsequent waiver of damages, a fact which was not known at the time the original order was entered.[5] The order is appealable.

Respondents maintain that the trial court erred as a matter of law in reviewing the demurrer. They assert that the original counterclaim was never amended nor any portion of it stricken and the trial court's prior determination that the counterclaim stated a cause of action could not be reviewed. We disagree.

The affidavit in support of the motion to review the trial court's order compelling discovery of the tax records and financial statements, in effect, amended the original counterclaim. This is true even though no formal change appears in the pleadings. *Baker L. & T. Co. v. Bayfield County L. Co.,* 166 Wis. 601, 604, 166 N.W. 314 (1918). The stipulation having amended the counterclaim, the trial court correctly reviewed its order overruling the demurrer to determine whether, in view of amendment, the counterclaim, on its face, stated a cause of action.

[5] *Compare Nelson v. American Employers' Ins. Co.,* 262 Wis. 271, 274, 55 N.W.2d 13 (1952). In that case the defendants interposed a second demurrer after the order overruling the original demurrer had been sustained on appeal solely on the basis that subsequent research had uncovered case law which may have been relevant to the issue of whether a cause of action was stated.

*Onderdonk v. Lamb,* 79 Wis.2d 241, 245, 255 N.W.2d 507 (1977).

### 2. WAS THE TRIAL COURT CORRECT IN OVER-RULING THE DEMURRER?

The trial court found that the counterclaim stated sufficient facts to state a cause of action for abuse of process. We disagree.

Bryce demurred to the counterclaim, the relevant paragraphs of which are stated above. A demurrer admits the truth of the material and well-pleaded facts, and legitimate inferences therefrom, for the purposes of testing whether those facts, if proved, constitute a cause of action.[6]

The Wisconsin Supreme Court has adopted Prosser's explication of abuse of process.

The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, . . . The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive . . . ."[7]

The Supreme Court in *Thompson* held that, while an "ulterior purpose" was properly alleged, the "definite act

---

[6] The motion to dismiss, sec. 802.06(2), Stats. (1975), is the functional equivalent of the demurrer.

[7] *Thompson v. Beecham,* 72 Wis.2d 356, 362–63, 241 N.W.2d 163 (1976), citing Prosser, *Law of Torts* (4th ed. 1971), at 857–58, sec. 121.

or threat not authorized by the process" was not so alleged. We find this to be true of the counterclaim in this action as well. As in *Thompson,* the counterclaiming defendants have failed to allege plaintiff had taken " 'irregular steps' under the cover of the process *after its issuance.*"[8]

All of the relevant allegations of the counterclaim address the ulterior purpose of the plaintiff in initiating the action. Those allegations are prefaced with the assertion "by making the allegations contained in plaintiff's complaint." The complaint contains no allegation of "irregular steps" taken after the commencement of this action and we cannot infer such steps from the existence of an ulterior purpose. A cause of action for abuse of process was not stated.

The trial court was nevertheless correct in overruling the demurrer if the counterclaim states any cause of action.[9] The record indicates that the respondents maintained in the trial court that a cause of action for abuse of process was pleaded and raised no other contentions. They have not argued in this court nor does this court find any other claim upon which relief could be granted.

3. CAN A COUNTERCLAIM FOR ABUSE OF PROCESS, BASED UPON THE MAINTENANCE OF THE ACTION ENCOMPASSED IN THE COMPLAINT, BE TRIED CONTEMPORANEOUSLY WITH THAT MAIN ACTION?[10]

Respondents have maintained they are entitled to litigate this claim contemporaneously with the action

[8] *Thompson,* supra at 363, quoting *Novick v. Becker,* 4 Wis.2d 432, 436, 90 N.W.2d 620 (1958). [Emphasis suppled.]

[9] *Onderdonk v. Lamb,* 79 Wis.2d 241, 245, 255 N.W.2d 507 (1977).

[10] This court addresses this issue to avoid a subsequent appeal on this issue if, after the cause is remanded, the counterclaim is amended to properly allege a cause of action in abuse of process.

encompassed in the complaint. To support this contention, they place primary reliance upon *Thompson v. Beecham, supra* at 361; *Maniaci v. Marquette University*, 50 Wis.2d 287, 300, 184 N.W.2d 168 (1971) ; and Prosser, *Law of Torts* (4th ed. 1971), p. 856, sec. 121, all of which state: "[I]n an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated *in his favor.*" (Emphasis supplied.) Respondents drop the qualifying phrase "in his favor" and conclude therefrom: "Since there is no requirement that the wrongful suit complained of be terminated before the abuse of process claim may be brought, Appellant's argument is meritless."[11]

We disagree. We first note that the quotations from *Thompson, Maniaci* and Prosser are made in the context of distinguishing causes of action for abuse of process and malicious prosecution. The phrase "in his favor" is absolutely central to the meaning of the quotation; a cause of action in malicious prosecution is dependent upon a termination of the preceding action in favor of the defendant therein (the plaintiff in the action for malicious prosecution).[12] Such a termination (favorable to the plaintiff) "is not a necessary element of a cause of action in abuse of process. Indeed, . . . abuse of process may even lie when the prior plaintiff has met with success in the former action."[13] We hold today that there must be a termination of the action complained of to establish a cause of action for abuse of process.

A necessary element of a cause of action for abuse of process cannot occur until the main action is commenced. The plaintiff in an action for abuse of process must

[11] Respondent's brief at 11.
[12] *Thompson, supra,* at 360.
[13] *Id.* at 361–62.

establish that the plaintiff in the action complained of took " 'irregular steps' under the cover of process *after its issuance.*" We also note that the record indicates the respondents stipulated that they would "claim as damages and introduce as evidence in support of damages only expenditures of monies actually made as a result of plaintiff's actions." The primary expense sought are attorneys' fees.[14] Almost without exception, some attorneys' fees will accrue as a result of postjudgment services such as motions after verdict and procedures utilized to enforce the judgment. In instances in which an appeal was taken from a judgment on a counterclaim for abuse of process, the majority of the "expenditures actually made as a result of the plaintiff's action" may accrue after a judgment is entered.

We believe the proper rule to be applied in this state was stated in *Slaff v. Slaff,* 151 F. Supp. 124, 125 (S.D.N.Y. 1957) : "A claim which might arise out of the bringing of the main action or out of allegations in the pleadings, or proceedings taken in the main action, may not be made the subject of a counterclaim. Such a claim is premature and cannot ripen or mature until the main action has been determined." The Wisconsin Supreme Court has recognized that courts may not adjudicate premature actions.[15] Adjudication of any properly-pleaded cause of action for abuse of process between these parties must await adjudication of the action upon which the abuse of process claim rests.

*By the Court.*—Order reversed and cause remanded.

[14] Appellant maintains that under *Baker v. Northwestern Nat. Casualty Co.,* 26 Wis.2d 306, 132 N.W.2d 493 (1965), the respondent is entitled only to statutory costs. We do not reach this issue in deciding this appeal.

[15] *See, e.g., Attoe v. State Farm Mut. Automobile Ins. Co.,* 36 Wis.2d 539, 544, 153 N.W.2d 575 (1967).